UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REAL VIEW, LLC,<br><br>       Plaintiff and Counterclaim<br>       Defendant<br><br>       v.<br><br>20-20 TECHNOLOGIES, INC.,<br><br>       Defendant and Counterclaim<br>       Plaintiff<br><br>BORIS ZELDIN AND LEONID PERLOV<br>Additional Party Defendants<br>in Counterclaim. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 07-12157<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DECLARATORY JUDGMENT PLAINTIFF
AND COUNTERCLAIM DEFENDANTS' MOTION FOR PRE-TRIAL
HEARING ON COPYRIGHTABILITY OF ALLEGED SIMILARITIES IN
<u>COMPUTER SOFTWARE PROGRAM</u>**

      Realview, LLC, Boris Zeldin and Leonid Perlov (collectively "Real View") respectfully move that the Court schedule a pre-trial hearing to determine which items in the user interface of the 20-20 software program are and are not protected by copyright law, and that the Court stay required actions under the Pretrial Order pending the outcome of that hearing. Real View respectfully suggests that the Court request that the parties demonstrate the software programs at issue at the hearing, to assist the Court in understanding the copyright issues in this case and make rulings on copyrightability.

**INTRODUCTION**

This is a copyright infringement case in which 20-20 alleges that Real View has infringed 20-20's copyright in the user interface of a computer program. There are no allegations of infringement based on copying of source code or object code. [1]

Since counsel last appeared before the Court on April 14, 2009, the parties have been preparing for trial, which is scheduled for July 20, 2009.  However, the issues in the case have been greatly focused since April.  20-20 Technologies, Inc., which is claiming copyright infringement of the user interface of its software program, served a detailed expert report on Real View on May 5, 2009.  Real View served its expert rebuttal report on 20-20 on June 3, 2009, and filed a motion for summary judgment on June 4, 2009.   20-20's opposition is due July 1, 2009 (per the Court's June 19, 2009 Electronic Order granting 20-20's motion for extension of time). The parties have exchanged pretrial disclosures, and between them have designated 18 trial witnesses.  There have been no settlement communications since the Status Conference held on April 14, 2009.

The parties are in fundamental disagreement on a key issue in this case: whether the judge or the jury performs the "filtration" or "analytic dissection" common to copyright cases, and particularly central to copyright cases involving computer software.  As discussed below, Real View contends that the law requires the judge to rule on which elements of the 20-20 user interface are uncopyrightable.  Real View contends that Seventh Circuit Chief Judge Frank H. Easterbrook stated the law on this concisely and emphatically in Pivot Point Intern., Inc. v. Charlene Products, Inc. 932 F.Supp. 220 (N.D. Ill. 1996) where, sitting by designation, he stated "[w]hether [items at issue in the case] . . . are copyrightable is a **question of law**, which the court will decide (perhaps in response to dispositive motions soon to be filed.)  **A jury has nothing to**

---

[1]   There are counterclaims of Lanham Act violations and violations of state law – however, Real View anticipates that most of the trial proceedings will relate to the allegations of copyright infringement.

**do with this subject**." Id. at 225, citing Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996)(emphasis added).

If the parties must prepare jury instructions, exhibits, opening statements, witness testimony, a pre-trial memorandum and motions in limne without knowing which elements of the 20-20 software are protected by copyright law, it will require vast over-preparation, and an inefficient use of the resources of the Court when trial begins.  Determining whether any elements of the 20-20 software are unprotected by copyright law (and Real View contends this is the vast majority) will simplify the trial and reduce the time and financial expense the parties will have to incur without such a ruling.  It will allow the jury to be empanelled and the trial to proceed without uncertainty as to which elements of the 20-20 software are part of the case for purposes of substantial similarity analysis.

Real View contends that most of the similarities identified in 20-20's expert report fall outside the protection of copyright law.  For example, much of the expert report describes similarities in the menu commands of the two programs.  If, as Real View argues, the menu commands are unprotected under the First Circuit's decision in Lotus v. Borland, 49 F.3d 807, 816 (1st Cir. 1995), aff'd by an equally divided court, 516 U.S. 233 (1996), the scope of the trial will be greatly reduced.  Moreover, Real View has argued that many of the alleged similarities are  uncopyrightable "methods of operation" under 17 U.S.C. §102(b), or are unprotectable under one or more of the "limiting doctrines" - merger, lack of originality, public domain, scènes à faire, words and short phrases, standard techniques or practices or external factors (such as market/industry demands, efficiency or compatibility).[2]  The court should make a determination on these items before trial, as well.

---

[2] In its Summary Judgment Motion Real View argued that after "filtering out" the protectable elements from the non-protectible, there are no similarities between the copyrighted work and the alleged infringing work.

2

The copyrightability of the similarities identified by 20-20 is the focus of Real View's summary judgment motion. 20-20 will have filed its opposition to that motion by July 1, 2009. Thus, the question of which items in the 20-20 software are appropriate for copyright protection will be before the Court in the form of those motions, and little or no additional briefing would be required.

## ARGUMENT

As discussed in Real View's summary judgment memorandum, the process for judging copyright infringement in a case involving computer software relies upon the conceptual framework known as "abstraction, filtration and comparison" (the "Altai Test") to aid in separating idea from expression and identifying protectable expression. See Computer Associates v. Altai, 982 F.2d 693 (2d Cir. 1992). The middle step[3] ("filtration", or "analytic dissection"), requires the Court to "filter out" the similarities in the software that are not protected by copyright law. Only after the judge rules on which elements are protected by copyright does the issue of substantial similarity go to the trier of fact.

Several court have analogized this process to claim construction under patent law. As U.S. District Court Judge Harold Baer, Jr. observed in Harbor Software, Inc. v. Applied Systems, Inc., 925 F. Supp. 1042, 1046 (S.D.N.Y. 1996), just as the judge determines claim construction in a patent case, the judge performs the "filtration" in a copyright case.[4]

---

[3] As discussed in the Summary Judgment Motion, the "abstraction" step is bypassed where the copyright holder alleges specific items that are the basis for infringement. Even if this step were necessary, it would be performed by the Court, not the jury.

[4] To quote Harbor Software in full, the court stated:

> This decision addresses the first two stages of the Altai analysis: abstraction and filtration. **I determined that the filtration analysis is a matter of law for the Court, rather than for the jury**. I based this decision on an analogy to the Federal Circuit's holding in Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd, 517 U.S. 370 (1996), that interpretation of patent claims is an issue of law. Just as patent claims determine the boundaries

3

The federal courts in the First Circuit have followed this procedure.  In <u>Yankee Candle Co. v. Bridgewater Candle Co., LLC</u>, 259 F.3d 25, 34 (1st Cir. 2001), the court stated: "[t]he extent to which the Yankee labels contain protected expression is a matter of law, determined by the court. Once this determination is made, the question of whether two works are substantially similar (and corresponding application of the ordinary observer test) is a matter for the trier of fact unless summary judgment is proper."  In <u>Yankee Candle</u> the court cited this statement to <u>Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 608-609) (1st Cir. 1988), where <u>the court</u> stated that

> under the "ordinary observer test "the court first must determine whether there has been 'copying' . . .. This step involves "dissection" of the work, perhaps aided by expert testimony, to assess whether there are sufficient articulable similarities to justify a finding that the defendant has copied from the protected work. . . .  Second, once "copying" is established, **the court** must determine whether the copying is sufficiently substantial to constitute "unlawful appropriation". . .. Under this second step of the analysis, therefore, the **trier of fact** applies the "ordinary observer" test, unaided by dissection or expert testimony, to determine whether the copying resulted in substantial similarity between the works.
>
> This test provides a workable, flexible framework for copyright infringement analysis. . . . By dissecting the accused work and identifying those features which are protected in the copyrighted work, **the court** may be able to determine as a matter of law whether or not the former has copied protected aspects of the latter.  . . . Assuming copying of protected aspects is established, **the trier of fact** can then assess pursuant to the "ordinary observer" test whether there is substantial similarity between the protected expression and the accused work.  (Emphasis added).

---

> of an inventor's monopoly, "filtration serves 'the purpose of defining the scope of plaintiff's copyright.' " <u>Altai</u>, 982 F.2d at 707 (quoting <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1475 (9th Cir.), <u>cert</u>. <u>denied</u>, 506 U.S. 869, . . . (1992)).  I find further support for my decision in the more broadly based unanimous decision by the Supreme Court affirming the Federal Circuit in <u>Markman</u>.  . . .  ("[J]udges, not juries, are ... better suited to find the acquired meaning of patent terms."); <u>id</u>. at ___, 116 S.Ct. at 1396 ("Uniformity would, however, be ill served by submitting issues of document construction to juries."); <u>see also</u> <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 788 F.Supp. 78, 94-96 (D. Mass. 1992).  (Emphasis added).

4

In <u>Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ., Inc.</u>, 914 F.Supp. 665, 674 (D. Mass. 1995), this U.S. District Court Judge cited these precedents and performed analytical dissection, stating:

> The court must dissect the works and determine whether "there are sufficient articulable similarities to justify a finding that the defendant has copied from the protected work."…. At this stage of the analysis, "[t]he court can determine, in at least a general way, those aspects of the [copyrighted] work that are protected by the copyright and that should be considered in the subsequent comparative analysis[.]" . . . . Dissection follows.

In <u>Lotus Development Corp. v. Borland Intern., Inc.</u>, 788 F.Supp. 78, 85 and 94-96 (D. Mass. 1992),[5] Judge Keeton engaged in an extensive discussion of this issue, and held that "all questions of law and fact bearing on copyrightability of elements of a computer software program are to be decided by a court, not a jury." As Professor Nimmer observes, although the First Circuit reversed Judge Keeton's judgment in favor of Lotus, "it implicitly accepted, to at least some extent the proposition that copyright subsistence should be determined solely by the court, rather than by a jury." M. Nimmer & D. Nimmer, <u>Nimmer on Copyright</u> § 12.10[B][1], at 12-182 (2008).

Most courts in other circuits have held to the same effect. As noted above, in <u>Pivot Point</u> Circuit Judge Easterbrook, sitting by designation, stated "[w]hether [items at issue in the case] . . . are copyrightable is a question of law, which the court will decide …**A jury has nothing to do with this subject**." 932 F.Supp. at 225. <u>See</u> <u>also</u> <u>Eagle Servs. Corp. v. H20 Indus. Servs., Inc.</u>, No. 02-36, 2005 WL 2406041, *4 (N.D. Ind. 2005) (**"[D]eterminations of copyrightability in all instances" are always reserved to the judge** and are therefore appropriate for summary judgment, citing M. Nimmer & D. Nimmer, <u>Nimmer on Copyright</u> § 12.10[B], at 3-12 (2005)); <u>Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.</u>, 243 F.Supp.2d 444, 452

---

[5] <u>Rev'd on other grounds</u>, 49 F.3d 807, 816 (1st Cir. 1995), <u>aff'd by an equally divided court</u>, 516 U.S. 233 (1996).

5

(M.D.N.C. 2003)(quoting <u>Pivot,</u> <u>supra,</u> and Nimmer, supra, "[c]ertain matters of law, including "determinations of copyrightability in all instances," are always reserved to the judge); <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements of a copyrighted work **<u>is a question of law for the court</u>**"). (Emphasis added to foregoing citations).

Only after the "filtraton/dissection" has been performed does the trier of fact, in this case the jury, consider substantial similarity.  <u>See</u>, <u>e.g.</u>, <u>T-Peg,Inc. v. Vermont Timber Works, Inc.</u>, 459 F.3d 97, 112 (1st Cir. 2006): "The substantial similarity inquiry . . . . focuses not on every aspect of the copyrighted work, but on those aspects of the plaintiff's work that are protectable under copyright laws and whether whatever copying took place appropriated those protected elements."

In this case the Court has never had the opportunity to view the computer programs at issue.  Real View is confident that when the Court views the programs it will conclude that 20-20 has vastly overreached, building its case on similarities that are non-copyrightable.  Rather than put Real View and the Court to the time and expense of preparing for trial a case that presents legal issues that the Court must address, and commencing a trial with these issues unresolved, Real View respectfully moves for an Order setting a hearing on copyrightability sufficiently far in advance of trial that the parties will not be forced to prepare unnecessarily for a trial on issues that may be ruled outside of copyright protection.  Real View respectfully suggests that an in-court demonstration of the user interfaces of the two programs, to be presented by the parties and their experts, is the most efficient way to proceed on these issues.  This will supplement the static graphics and "screen shots" in the expert reports.  It will allow the Court to become familiar with the programs, question the parties and experts as necessary, and streamline trial of the case.

## CONCLUSION

For the foregoing reasons, Real View respectfully moves that the Court schedule a hearing on copyrightability prior to trial in this case, and that the Court further stay all required actions under the Pretrial Order so that the parties may take the Court's rulings into consideration in complying with the Pretrial Order.

Respectfully submitted,

/s/ Lee T. Gesmer
Lee T. Gesmer, BBO #190260
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone: (617) 350-6800
Facsimile: (617) 350-6878

Dated: June 23, 2009

### Certificate of Service

I hereby certify that on June 23, 2009 I electronically filed the foregoing with the Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lee T. Gesmer
Lee T. Gesmer