# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| REAL VIEW, LLC, | ) |
| | ) |
|       Plaintiff and Counterclaim | ) |
|       Defendant | ) |
| | ) |
| | ) |
| | ) |
|       v. | ) |
| | ) |
| 20-20 TECHNOLOGIES, INC., | )      CIVIL ACTION NO. 07-12157-PBS |
| | ) |
| | ) |
| | ) |
|       Defendant and Counterclaim | ) |
|       Plaintiff | ) |
| | ) |
| BORIS ZELDIN AND LEONID PERLOV | ) |
| Additional Party Defendants | ) |
| in Counterclaim. | ) |

## REAL VIEW, LLC'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Pretrial Order, Real View, LLC, Boris Zeldin, and Leonid Perlov

respectfully submit the following proposed jury instructions.

Respectfully submitted,

REAL VIEW LLC, BORIS ZELDIN
AND LEONID PERLOV

By their attorneys,

/s/ Nancy M. Cremins                    .
Lee T. Gesmer, BBO #190260
Joseph J. Laferrera, BBO #564572
Nancy M. Cremins, BBO #658932
Crystal L. Lyons, BBO # 677931
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878
email: lee.gesmer@gesmer.com
       joe.laferrera@gesmer.com
       nancy.cremins@gesmer.com
       crystal.lyons@gesmer.com

Dated:  January 26, 2011

## Certificate of Service

I hereby certify that on January 26, 2011, I electronically filed the instant document with the Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nancy M. Cremins
Nancy M. Cremins

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 1 – INTRODUCTION**

In this case, Real View, LLC filed a complaint against 20-20 Technologies ("20-20") asking that the court make a determination that the user interface of Real View's software, ProKitchen, did not infringe on 20-20 Technologies' software, 20-20 Design.  In response, 20-20 asserted counterclaims against Real View, LLC, Boris Zeldin, and Leonid Perlov, (collectively "Real View") for copyright infringement, trade dress infringement, unfair competition, and intentional interference with advantageous relations.

It is your role as the jury to determine whether 20-20 advanced sufficient evidence during the course of the trial to establish any of its claims.  If you determine that 20-20 has established by a preponderance of the evidence any of it claims against Real View then you must determine whether 20-20 is entitled to any monetary damages as a result.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 2 – DEFINITION OF COPYRIGHT**

20-20 owns a separate copyright in versions 6.1, 6.4, and 8.1 of its software 20-20

Design, which 20-20 has registered with the U.S. Copyright Office.

A copyright grants the owner exclusive rights to reproduce, distribute, perform, or

display the copyrighted work.  A copyright also grants the owner exclusive rights to create a new

work that is based upon the copyrighted work, called a "derivative work."  Because these rights

are exclusive, if someone else takes one of these actions without permission, they are said to

have "infringed" the copyright.  In this case 20-20 alleges that Real View has infringed 20-20's

copyright in 20-20 Design version 6.1,  by the creation and sale of Real View's software product

ProKitchen.[1]

---

[1] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation, § 1.1 (2008)
and 17 U.S.C. §§ 101, 102, 106.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 3 - COPYRIGHTED SOFTWARE AT ISSUE**

Specifically at issue in this case are the "screen displays," of the 20-20 and Real View computer programs.  This is what you see on the screen of a computer when you use a computer. Because the screen displays use graphics, they are also sometimes referred to a the "graphical user interface" of the program.

There is no allegation is this case that Real View ever had access to the source code – the programming code – of 20-20 Design.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 4 - OWNERSHIP AND ACCESS**

In this case, Real View does not dispute 20-20's ownership of a valid copyright in versions 6.1, 6.4, and 8.1 of 20-20 Design.  Nor does Real View dispute that it had access to version 6.1 of 20-20 Design while it was developing ProKitchen.   20-20 must show Real View had access to versions 6.4 and 8.1 of 20-20 Design.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 5 – FACTUAL COPYING**

To establish copyright infringement 20-20 must first establish that Real View copied 20-20 Design as a factual matter.  20-20 must establish access to, and copying of, versions 6.1, 6.4, and 8.1, individually, in the creation of ProKitchen 2.0 and 3.0, respectively.  20-20 may do this by direct evidence of factual copying or by establishing that Real View had access to 20-20 Design and that ProKitchen and 20-20 Design are so substantially similar that you may infer that there was factual copying.  This is known as probative similarity.[2]  Real View has stipulated to access to 20-20 Design version 6.1 only.

---

[2] Lotus v. Borland,  49 F.3d 807, 813 (1st Cir. 1995), aff'd by an equally divided court, 516 U.S. 233 (1996), citing Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340 (5th Cir. 1994); T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 109 (1st Cir. 2006) (citations omitted).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 6 – DOWNLOADED COPY**

Real View has stipulated that it illegally downloaded a copy of 20-20 Design version 6.1 without permission of 20-20.  The issue of whether or not ProKitchen is an infringing product is wholly independent of that fact.  Despite the download, Real View is not entitled to a finding of copyright infringement unless 20-20 has established that ProKitchen infringes 20-20 Design. That Real View may have viewed or studied 20-20's program is irrelevant to that determination. You are required to make an independent determination of whether ProKitchen infringes 20-20 Design in accordance with the instructions that I provide. [3]

---

[3] Liu v. Price Waterhouse LLP, 2000 WL 1644585 (N.D.Ill. 2000) (Court declined to issue instruction that would have awarded damages to plaintiff based on a "fruit of the poisonous tree" theory due to the illegal copy made by the defendant. Plaintiff had to separately establish whether the disputed program was substantially similar.); Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 538 (5th Cir.1994) (rejecting part of district court's order that enjoined not only infringing product but also "all future modifications and revisions" because "the most [the district court] could enjoin were future modifications and improvements of the [defendant's product] that are substantially similar to [the plaintiff's] copyrighted Materials."); DSC Communications Corp. v. DGI Tech., Inc., 898 F.Supp. 1183, 1189 n. 3 (N.D.Tex.1995) ("[T]he test of copyright infringement has two requirements, access and substantial similarity .... while DSC may succeed in proving access because DGI is not using the preferred 'clean room' method of development, DSC must still prove substantial similarity between its firmware and the DGI firmware.)

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 7 – COMPUTER PROGRAMS**

Although copyright law provides protection for computer programs, the level of protection is different than that provides to creative works, such as novels or musical compositions.  Copyright law protects expression, not ideas, and because computer programs are essentially utilitarian works, the courts have been careful to try to define what is protectable expression in computer software, and what is unprotectable.[4]   I held hearings in this case in 2009, and heard evidence from the same experts you have heard in this case -- Professor Davis and Professor Abbott.  I concluded that some of the items 20-20 claimed had been infringed were "methods of operation" under the Copyright Act.  I also ruled that, with a couple of exceptions, the items that were not methods of operation were subject to legal rules, the result of which, required that 20-20 Design be protected as a "compilation." [5]

First, I will discuss what I meant by "methods of operation," and then I will explain what I mean by a compilation.

---

[4]  Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 704 (2d Cir. 1992)("The essentially utilitarian nature of a computer program further complicates the task of distilling its idea from its expression").
[5]  Real View, LLC v. 20-20 Technologies, Inc., 683 F. Supp. 2d 147, 158 (D. Mass. 2010) (hereinafter "Order").

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 8 – METHODS OF OPERATION

The Copyright Act states that copyright law does not protect "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."[6]  Copyright protection extends to expression embodied in the computer program, but is not available for layouts.[7]  The screen display of a computer program is only entitled to copyright protection as a compilation, which I will explain in a later instruction.

With respect to computer programs, the courts have concluded that the means by which users control and operate a program is a method of operation.  Methods of operation are not protected by copyright law.[8]

I have ruled that the following items in 20-20 Design are methods of operation, and you are bound by that ruling:

1. The menu command hierarchy in 20-20 Design.  This covers all menus in the program, including the main menu that appears on the top of the opening screen, and the drop-down and pop-up menus.

2. The menus that appear inside the "side windows," such as the menus that allow users to navigate to a manufacturer and locate a particular item.

3. The appearance of the icons.  For example, the icons that appears in the horizontal and vertical tool bars on the opening screen are methods of operation.

4. The feature that allows a user to enter the length and angle of a wall in the "edit box."

5. The buttons and other controls inside dialog boxes that are used to control and operate the program, for example the "save" and "print" buttons.

6. The use of mouse clicks or operations involving the mouse to operate the program.

7. The "Save as Image" command.

8. The elevation, placement and dimensions options.

---

[6]  17 U.S.C. § 102(b).
[7]  U.S. Copyright Office, Circular 61.
[8]  <u>Lotus v. Borland</u>,  49 F.3d 807, 815 (1st Cir. 1995), <u>aff'd by an equally divided court</u>, 516 U.S. 233 (1996).

9.   The note and comment options.

10.  The placement zone.

11.  The display settings box, except to the extent that they are part of the graphical user interface, and are protectible as part of a compilation in the work as a whole.

12.  Display boxes and editing choices for modifying wall properties except to the extent that they are part of the graphical user interface, and are protectible as part of a compilation in the work as a whole.

13.  Methods of placing an item, resizing windows or doors, or editing countertops.

14.  The methods of allowing a user to add, draw, place, move, resize and delete walls and objects.[9]

---

[9] Order, pgs. 17-39.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 9 – JURY-IDENTIFIED METHODS OF OPERATION**

Although I have identified most of the general categories of methods of operation, you should use your own discretion and understanding of 20-20 Design to determine what may be a method of operation. The rule is that if something on the screen of 20-20 Design "provides the means by which users control and operate" the program, it is a method of operation and is not protected by copyright.[10]

---

[10]  Lotus, supra, 49 F.3d at 815; Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 989 (9th Cir. 2009)(" jury instructions properly identified the 'unprotectable elements'" of screen displays).

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 10 -  IDEA VERSUS EXPRESSION

In addition to method of operation, copyright law does not protect ideas, so you must distinguish between the ideas and expression in the 20-20 Design program.  The creator of a computer program has no exclusive right to any idea, procedure, process or system regardless of the form in which it is described, explained, illustrated, or embodied in such program.[11]   One way to distinguish idea from expression is to determine whether the authors of 20-20 Design made any expressive choices in implementing an aspect of the program's interface; that is, whether there is an expressive aspect to the particular aspect of the software.  If so, it is only that expression, and not the idea, that is protectable under copyright law.   Additionally, only expression that is "fixed" by the author is entitled to copyright protection.  This means that the author of the work must embody the expression in sufficiently permanent or stable medium to allow it to be perceived.[12]

---

[11] Lotus Development Corp., 49 F.3d at 815, citing 17 U.S.C. 102(b); ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.4.4 (2008).
[12] 17 U.S.C. §§ 101, 102(a).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 11 - THE MERGER DOCTRINE**

Copyright law may protect the particular way in which an idea is expressed, even if the idea itself is not protected.  However, an exception to this rule is if there is only one way, or only a few ways, of expressing an idea.  If that is the case, the idea and the expression are said to merge, and the expression is entitled to limited copyright protection.[13]  In other words, the test of appropriation must vary with amount of creativity in copyrighted work.[14]  Similarity, that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying.[15]

Thus, in comparing 20-20 Design and ProKitchen you must consider the merger doctrine into your analysis of the two programs.

I have ruled that the following items in 20-20 Design are subject to the doctrine of merger, and you are bound by that ruling:

1. The sequence of sub-windows on the left side of the screen: information box, edit box, hierarchical catalog box, drag and drop listing, and search box.

2. The selection, arrangement, and appearance of icons.

3. The subdivision of the main window into plan and elevation views.

---

[13] Skinder-Strauss Associates v. Massachusetts Continuing Legal Education, Inc., 914 F. Supp. 665, 673 (D. Mass 1995) ("as idea and expression merge, 'a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea'"), quoting Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 607 (1st Cir.1988); ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.4.7 (2008); Altai, 982 F.2d at 708, Order, p. 16-17.
[14] Concrete Machinery, supra, 843 F.2d at 607,  quoting Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 908 (3d Cir.), cert. denied, 423 U.S. 863 (1975).
[15] Concrete Machinery, supra, 843 F.2d at 607.

4.  The use of tabs to provide multiple views of the same design with limited visibility of

   items.

5.  The automatic addition of overhangs and countertops.

6.  The "User Shape" allowing a customizable countertop shape.

7.  Vertical set of icons next to boxes.

8.  Selection and appearance of icons.

9.  Horizontal toolbar, and selection of commands.

10. Multiple views of same design.

11. Main window divided into a plan view and elevation view, with plan view at bottom

   and elevation view on top.

12. Similar icons used in drawing or specification of walls or construction lines.[16]

Note that the fact that there are alternative ways to express an idea does not establish that the
expression is protected by copyright.[17]

---

[16] Order, pgs. 17, 21-24, 39.
[17] 4 NIMMER ON COPYRIGHT § 13.03[F][e][iii] ("[A]lternative possibilities cannot, by
themselves, vouchsafe copyrightability.")

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 12 – JURY-IDENTIFIED MERGER DOCTRINE**

Although I have identified most of the general categories concerning the merger doctrine,

you should use your own discretion and understanding of 20-20 Design to determine what may

involve the merger doctrine.  The rule is that if there is only one way, or only a few ways, of

expressing an idea, it is covered by the merger doctrine and is not protected by copyright. [18]

---

[18] 4 <u>NIMMER ON COPYRIGHT § 13.03[F][e][iii]</u> ("[A]lternative possibilities cannot, by themselves, vouchsafe copyrightability.")

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 13 -  BLANK FORMS**

I mentioned the "blank forms" rule earlier.  This rule of copyright law states that a form that conveys no information and serves only to provide blank space for recording information contains no expression or selection of information that could warrant copyright protection.  If you conclude that part of the program is a blank form, it is not protected by copyright.[19] Furthermore, the format, arrangement, and typography of a work is not protected, nor are works consisting entirely of information that is common property containing no original authorship.[20] For example, copyright protection for an original compilation of terms or phrases published with a blank form would extend only to the compilation, not to the blank form.[21]

For example, I have ruled that the following items in 20-20 Design are Blank Forms, and you are bound by that ruling:

1.  The presentation and nomenclature in the Bill of Materials.

2.  The table in the "Styles and Pricing" and "Global Options" dialog boxes.

3.  The dialog box that allows a user to type a note.[22]

---

[19]   Baker v. Selden, 101 U.S. 99, 107 (1879); Kregos v. Associated Press, 937 F.2d 700, 708 (2d Cir. 1991); *see also* Utopia Providers Systems v. Pro-Med Clinical Sys., 596 F. 3d 1313, 1324 (11th Cir. 2010) (holding medical forms software unprotected by copyright because contained only standard components common in provision of medical services).
[20] U.S. Copyright Office, Circular 32.
[21] Id.
[22] Order, pgs. 26-27, 40-41.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 14 - THE DOCTRINE OF SCÈNES À FAIRE**

Under the doctrine of scènes à faire, which means a standard or typical theme, setting, or background that is common to a type of work, is unprotected by copyright law.  This doctrine applies to computer software programs.  Standard software design techniques, "tools of the trade," design choices determined by compatibility requirements or industry design standards, fall under the scènes à faire doctrine, and are entitled to limited copyright protection.[23]

I have ruled that the following items in 20-20 Design are subject to the doctrine of Scènes à Faire, and you are bound by that ruling:

1.  The selection, arrangement, and appearance of icons.

2.  The selection and arrangement in the main set of actions, or menu command.

3.  The selection and ordering of commands.

4.  Use of similar icons in a similar order for the drawing or specification of walls or construction lines.[24]

---

[23] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.4.8 (2008); Altai, 982 F.2d at 709 citing Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 208 (9th Cir. 1988); citing 3 Nimmer § 13.03[F][3], at 13-65; Engineering Dynamics v. Structural Software, 26 F.3d 1335, 1347 n. 12 (5th Cir. 1994).
[24] Order, pgs. 17, 21-24.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 15 – JURY-IDENTIFIED SCÈNES À FAIRE**


Although I have identified most of the general categories concerning the scènes à faire

doctrine, you should use your own discretion and understanding of 20-20 Design to determine

what may involve scènes à faire.  The rule is that a standard or typical theme, setting, or

background that is common to a type of work, is unprotected by copyright. [25]

---

[25] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.4.8 (2008); <u>Altai</u>, 982 F.2d at 709 <u>citing</u> <u>Data East USA, Inc. v. Epyx, Inc.</u>, 862 F.2d 204, 208 (9th Cir. 1988); <u>citing</u> 3 Nimmer § 13.03[F][3], at 13-65; <u>Engineering Dynamics v. Structural Software</u>, 26 F.3d 1335, 1347 n. 12 (5th Cir. 1994).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 16 - PUBLIC DOMAIN**

The "public domain" is the realm of works that belong to the community at large and are unprotected by copyright.  Elements of a computer program that have become standard or commonplace in the software industry are considered to be in the public domain, and are not entitled to copyright protection.[26]

---

[26] Altai, 982 F.2d at 710 (citations omitted); see also Engineering Dynamics v. Structural Software, 26 F.3d 1335, 1347 n. 12 (5th Cir. 1994).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 17 - OTHER UNPROTECTED ELEMENTS**

In addition to the above, individual words and short phrases such as names, titles, and slogans are not protected by copyright.[27]

The functionality of a computer program may not be protected by copyright law. Although a programmer may have written a program that performs a certain function, other programmers are free to write programs that perform the same function. A useful article is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. The expressive functions must be separable from the functional aspect to be copyrighted.[28] Utilitarian functions, including the shape of the article, are not protectable.[29] Useful articles may be protected by a design patent.[30]

The computer programs in this case both use the standard Windows user interface, and aspects of a program that are standard under the Windows user interface are not protected by

---

[27] CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1520 (1st Cir. 1996) (citations omitted); Order, 693 F.Supp.2d at 168; U.S. Copyright Office, Circular 34; 1 Nimmer, 2.01[B], at 2-13-18; Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072-73 (2d Cir. 1992)(noting that single words and short phrases in copyrighted text are not copyrightable); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972)(holding that "most personal sort of deodorant" is short phrase or expression, not an "appreciable amount of text," and thus not protectible); Perma Greetings, Inc. v. Russ Berrie & Co., Inc., 598 F.Supp. 445, 448 (E.D.Mo.1984)("Clichéd language, phrases and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, [sic] are not subject to copyright protection."); 37 C.F.R. § 202.1(a) (1994) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans" and "familiar symbols and designs").]]

[28] 17 U.S.C. § 101; see also Brandir Int'l, Inc. v. Cascade Pacific Lumber, Co., 834 F. 2d 1142 (2d Cir. 1987).

[29] Darden v. Peters, 488 F.3d 277, 287 (4th Cir. 2007) ("shapes fall within the narrow category of works that lack even a minimum level of creativity" are are therefore not entitled to copyright protection); U.S. Copyright Office, Circular 92, Section 1302 (copyright protection does not extend to "staple or commonplace, such as a standard geometric figure, a familiar symbol, an emblem, or a motif, or another shape, pattern, or configuration which has become standard, common, prevalent, or ordinary" ).

[30] U.S. Copyright Office, Factsheet FL-103.

copyright law.  Some examples of features standard to Windows are the use of drop down menus, the use of graphical icons, the use of the mouse to move objects around on the screen, the ability to open, drag and close windows and objects on the screen, the ability to resize windows, the ability to change the color of certain aspects of the program, and the use of  a scroll bar to move up and down the screen, or left and right.  You have heard evidence on this, and if you find that an element of 20-20 Design is determined by the Windows user interface, it is not original to 20-20, and is not protectable by copyright law.[31]

In the field of computer programming, simplicity of use, efficiency, and speed in carrying out the functions of the software are important to a program's design.  If a particular expression in the interface of the program is attributable to any of these items, it is unprotected by copyright law.[32]

---

[31] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.5.10 (2008); Altai, 982 F.2d at 706-10; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir.1994)(Apple's graphical system of manipulating icons, pull down windows, not protected).
[32] Id.

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 18 - PROGRAM COMPATIBILITY**

As the courts have considered copyright law as applied to computer programs, they have noted that it is the policy of copyright law to allow users to move easily from one program to another, without having to relearn a new set of operations.  As you evaluate 20-20 Design and consider whether and to what elements of 20-20 Design are protectable expression, and whether Real View has copied protectable expression, you may keep this policy in mind.[33]

Copyright protection also does not extend to the time or labor invested in developing a program, or the "sweat of the brow" involved.[34]

---

[33]  "That the Lotus menu command hierarchy is a "method of operation" becomes clearer when one considers program compatibility. Under Lotus's theory, if a user uses several different programs, he or she must learn how to perform the same operation in a different way for each program used. For example, if the user wanted the computer to print material, then the user would have to learn not just one method of operating the computer such that it prints, but many different methods. We find this absurd."  Lotus, 49 F.3d at 817-818.

[34] Lotus, 49 F. 3d at 818; see also Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 349-50 (1991).

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 19 - PROTECTION OF A COMPILATION

The elements of 20-20 Design that are protected by copyright law may be protected only as a compilation.[35]

Copyright can protect the selection, coordination, and arrangement of elements that may be unprotectable individually, if the selection, coordination, and arrangement is itself original.[36] This is referred to as a compilation. Copyright protection of a compilation cannot extend to methods of operation, however, which are statutorily excluded from copyright protection.[37]

Compilations are protected only against virtually identical copying; that is, a virtually identical selection and arrangement.[38]

---

[35]  Order, 693 F. Supp. 2d at 150.

[36]  Feist, 499 U.S. 340.

[37] 17 U.S.C. § 102(b).

[38] Order, 693 F. Supp. 2d at 152; BUC Intern. Corp. v. International Yacht Council Ltd., 49 F.3d 1129 (11th Cir. 2007)("Virtual identicality," as adopted in this circuit, applies to "claims of compilation copyright infringement of nonliteral elements of a computer program."); Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003); Jacobsen v. Deseret Book, 287 F.3d 986 (10th Cir. 2002)("if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with thin works."); Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d, 25, 35-36 (1st Cir. 2001)(agreeing with district court's holding that, "as a matter of law, there could be no infringement unless [defendant's works] were "nearly identical"); MiTek Holdings, Inc. v. Arce Eng'g Co., 89 F.3d 1548, 1558-59 (11th Cir. 1996); Apple Computer Inc. v.. Microsoft Corporation, 35 F.3d 1435 (9th Cir. 1994)(where constituent elements of screen display not protectable infringement would be found only where the programs were "virtually identical"); FragranceNet.com, Inc. v. FragranceX.com, Inc., 2010 WL 174159 (E.D.N.Y. 2010)(thin copyright protected only against "virtually identical copying" Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983 (9th Cir. 2009)("The district court instructed the jury that "to establish that [defendant] is liable for infringement, [plaintiff] must show that the accused screen displays are virtually identical to protected elements of corresponding screen displays of the [plaintiff's] program"); see also Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 914 (9th Cir. Cal. 2009) ("If there's only a narrow range of expression . . . then copyright protection is "thin" and a work must be '*virtually identical*' to infringe"); MYWEBGROCER, LLC v. Hometown Info, Inc., 375 F.3d 190, 193 (2d Cir. 2004) ("*wholesale verbatim copying*"); Jacobsen v. Deseret Book, 287 F.3d 986 (10th Cir. 2002)("if substantial similarity is the normal measure required to demonstrate infringement, '*supersubstantial*' similarity must pertain when dealing with thin works."); Schoolhouse, Inc. v. Anderson, 275 F.

Each version of 20-20 Design at issue in this case is a separately registered and copyrightable work, and must be considered independently of the other versions.[39]

---

3d 726 (8th Circuit 2002) (("after <u>Feist</u>, it takes virtually "***extensive verbatim copying***" to constitute infringement") (citing <u>Transwestern Publ'g Co. v. Multimedia Mktg. Assocs., Inc.</u>, 133 F.3d 773, 776-77 (10th Cir.1998)); <u>Transwestern Publ'g Co.</u>, 133 F.3d at 776 ("[I]f substantial similarity is the normal measure required to demonstrate infringement, ***'supersubstantial' similarity*** must pertain when dealing with 'thin' works") (citing ***"virtual identity"*** standard; <u>Apple</u>, 35 F.3d at 1439); <u>CCC Information Serv. v. Maclean Hunter Mkt. Rep.</u>, 44 F.3d 61, 72 (2d Cir. 1994) ("***wholesale***" copying); <u>Engineering Dynamics v. Structural Software</u>, 26 F.3d 1335, 1348 (5th Cir. 1994) (collecting cases); <u>Inkadinkado, Inc. v. Meyer</u>, 2003 U.S. Dist. LEXIS 17458 (D. Mass. 2003) ("copyright protection provided [a compilation] is . . . thin, guarding against only ***'virtually identical copying'*** of the artist's original contribution to ideas already in the public domain, <u>quoting</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003)); <u>FragranceNet.com, Inc. v. FragranceX.com, Inc.,</u> 2010 WL 174159 (E.D.N.Y. 2010) (thin copyright protected only against "***virtually identical copying***"); <u>Harbor Software, Inc. v. Applied Systems, Inc.</u>, 936 F.Supp. 167, 171 (S.D.N.Y.1996)("***trivial difference***" test applied to screen displays and reports which were compilations of factual information).

[39] 17 U.S.C. § 411; <u>SimplexGrinnell v. Integrated Systems & Power, Inc.</u>, 642 F. Supp. 2d 167, 188 (S.D.N.Y. 2009).

# COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 20 -  PROTECTION OF A COMPILATION AS A WHOLE

In addition, in comparing 20-20 Design and ProKitchen under the virtually identical

standard, you must compare the two works as a whole and determine that Real View has

engaged in wholesale copying of the entire work, or what the law also sometimes calls "bodily

appropriation."[40]   In other words, you must consider the selection, coordination, or arrangement

of the protectable elements of a compilation in the aggregate, and not piecemeal.[41]

---

[40]   A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutions an original work of authorship." 17 U.S.C. § 101.
See Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group, 463 F.3d 478, 483 (6th Cir. 2006) ("compilation copyright is very limited and usually requires substantial verbatim copying . . .  Sixty-one percent can hardly be considered the 'same' selection) (citations omitted); Schoolhouse, Inc. v. Anderson, 2001 WL 1640081 (D.Minn. 2000)("court must compare the allegedly infringing work to the protected work as a whole"); aff'd,  275 F.3d 726, 729–30 (8th Cir. 2002)("'extensive verbatim copying' to constitute infringement" seventy-four percent of the same items not sufficient); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989)(copyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of "bodily appropriation of expression," or "unauthorized use of substantially the entire item"), quoting Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 605 (1st Cir. 1988).

[41] William F. Patry, *Patry on Copyright* § 3:66 (2009).  See also, Transwestern Pub. Co. v. Multimedia Mktg. Assoc., 133 F. 3d 773, 776-77 (10th Cir. 1998) (holding a compilation protectable insofar as it features original selection, arrangement or coordination of facts as they appear in a 'work as a whole'; "if we focus on the respective directories as a whole there are many differences"); MiTek Holdings, Inc. v. Arce Engineering Co., Inc., 89 F. 3d 1548, 1558 (11th Cir. 1996) (software compilation, "protection is limited, however, and extends only to the work as a whole");  Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989) ("copyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression' . . . copying or unauthorized use of substantially the entire item"); Schoolhouse, Inc. v. Anderson, 2000 U.S. Dist. LEXIS 22524 at *16 (D. Minn. 2000) ("because the copyrightability of a factual compilation depends upon the originality in selection, coordination, or arrangement of the facts 'as a whole' work, 17 U.S.C. § 101, in an infringement action the court must compare the allegedly infringing work to the protected work as a whole"); Wood v. Cendant Corp., 2006 U.S. Dist. LEXIS 18899 at *24 (N.D. Okla. 2006) (same).

When comparing the works, you should consider their dissimilar aspects, as well as any similar ones.  It is in this context that you must decide whether the "virtually identical" standard is met.[42]

This means that 20-20 must separately establish that version 2.0 of ProKitchen is virtually identical to its compilation in 20-20 Design version 6.1, 6.4 and/or 8.1.  20-20 must also separately establish that version 3.0 of ProKitchen is virtually identical to its compilation in 6.1, 6.4, and /or 8.1.

Consideration of a compilation "as a whole" is not the same as consideration of the "look and feel" or "total concept and feel" of the compilation.  In software cases such as this one, you should not base your decision regarding infringement on the general "look," "feel," or "total concept" of the software, but on the protectable elements of these programs, in the manner I have described to you.[43]

_____

[42] 4 Nimmer & Nimmer, Nimmer on Copyright, § 13.03[B][1][a]) (2006) ("[i]f the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results."); T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97 (1st Cir. 2006) (citing Nimmer); Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F. 2d 600 (1st Cir. 1988) ("copying only trivial aspects of another's work will not result in substantial similarity; it is only when the copying is sufficiently extensive that infringement occurs"); Greenberg v. Town of Falmouth, 2006 U.S.Dist. LEXIS 4792 (D. Mass. 2006) (same).

[43] See Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc., 777 F.2d 485, 493 (9th Cir. 1985) (in compilation case "what is important is not whether there is substantial similarity in the total concept and feel of the works, . . .  but whether the very small amount of protectable expression in Cooling Systems' catalog is substantially similar to the equivalent portions of Stuart's catalog");  McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987) (Cooling Systems holding is inapplicable "because the instant case involves an artistic work, while Cooling Systems involved a factual work. . . Works that are not factual receive much broader protection under the copyright laws because of the endless variations of expression available to the artist"); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989) (holding it error to give "highly subjective" "total impact and effect" jury instruction in case involving calendar organizers, which are  copyrightable only as a compilation and are not infringed "in the absence of bodily appropriation of expression"); Apple Computer, Inc. v. Microsoft Corp., 35 F. 3d 1435, 1446 (9th Cir. 1994) ("unprotectable elements have to be

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 21 - PROOF OF DAMAGES

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for 20-20, you must determine its damages. 20-20 has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate 20-20 for injury you find was caused by Real View.   You should consider the following:

20-20 is entitled to recover the actual damages, if any, it suffered as a result of the infringement.  In addition, 20-20 is entitled to recover any profits of Real View attributable to the infringement that are not taken into account in computing the actual damages.  Damages are proper if they are "attributable to" an infringing work.  Under the Copyright Act, profits are not "attributable to" an infringement unless the work which is either sold or otherwise used to acquire profits infringes on the plaintiff's copyright.[44]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence, and not upon speculation, guesswork, or conjecture.[45]

---

identified, or filtered, before the works can be considered as a whole").  See also William F. Patry, Patry on Copyright, Section 9.73 (2010) ("if significant elements of a work are unprotectable, ... comparing the overall appearance of the parties' works may sweep into that consideration the unprotectable elements, thereby skewing the analysis against the defendant and in the process impermissibly expanding the scope of the plaintiff's copyright").

[44] Liu v. Price Waterhouse LLP, 2000 WL 1644585 (N.D.Ill. 2000); Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701 (2d Cir. 1992).

[45] 17 U.S.C. § 504(b); 9th Circuit Manual of Model Jury Instructions (Civil) No. 5.1

Additionally, each copyrighted version of 20-20, and each version of ProKitchen, is a separate work.  This means that before you may award damages for infringement of any version of 20-20 by any version of ProKitchen, you must find that 20-20 has proven Real View copies that version and that the copying caused damage to 20-20.[46]

---

[46] SimplexGrinnell v. Integrated Systems & Power, Inc., 642 F. Supp. 2d 167, 195 (S.D.N.Y. 2009); 17 U.S.C. § 411.

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 22 - ACTUAL DAMAGES

Actual damages are intended to compensate a copyright owner for losses as a result of the infringement.  Actual damages refer to the harm 20-20 may have suffered as a result of the infringement.  Actual damages include any profits 20-20 may have lost due to Real View's infringement, including but not limited to sales of the copyrighted work. You should broadly construe actual damages to favor victims of infringement, keeping in mind that a principal objective of copyright law is to enable creators to earn a living through the sale or licensing of their copyrighted works.

20-20 must establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss.  In other words, it must establish by a preponderance of the evidence that, but for the infringement, it would not have suffered the damages in question.  There is no presumption that 20-20 has suffered actual damages from infringement.  The fact that Real View sought to compete with 20-20 to the point of using some of its work, does not by itself support an award of damages. [47]

Similarly, if you find 20-20's damages were caused by factors other than Real View's infringement, actual damages should not be awarded.

---

[47] <u>Data Gen. Corp. v. Grumman Systems Support Corp.</u>, 36 F. 3d 1147, 1170, 1175 (1st Cir.);
ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.7.2 (2008);
William F. Patry, <u>Patry on Copyright</u>, §22:101 (22-265 – 22-268 );§22:102 (22-269), (Thompson
Reuters/West, 9/2009).

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 23 - PROFITS RESULTING FROM INFRINGEMENT

In addition to its actual damages, if you find that Real View infringed, 20-20 is also entitled to Real View's profits that are attributable to the infringement, to the extent not already taken into account in computing 20-20's actual damages. If Real View's profits have been accounted for in the award of actual damages, to avoid double recovery, a separate award of Real View's profits should not be made.  For example, if 20-20 proves it lost 10 sales because of infringement and that Real View made those 10 sales, there is only one award of damages/profits from those 10 sales, the award should not be made on 20 sales.

You may make an award of Real View's profits only if you find that 20-20 showed a causal nexus between the infringement and Real View's gross revenue.

In establishing the amount of Real View's profits, 20-20 is required to present proof only of Real View's gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement. Once these two elements are established, the burden of proof then shifts to Real View to reduce this amount. Real View must prove by a preponderance of evidence the amount of its deductible expenses and other elements of its profits, if any, that are attributable to factors other than the infringement.

In other words, you are to calculate the profits attributable to the infringement, if you find any, as Real View's gross revenues proven by 20-20, less the cost of products associated with those revenues.[48]

---

[48] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §1.7.3 (2008); William F. Patry, Patry on Copyright, §22:112 (22-285); §22:117 (22-294 – 22:295), (Thompson Reuters/West, 9/2009).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 24 - DEDUCTIBLE EXPENSES**

Where expenses are incurred in the direct production of the infringing work, those expenses may be deducted from Real View's gross revenues, provided that they directly assisted in the production of the infringing goods.  Real View's deductible expenses include operating costs, overhead costs, shipping costs, commissions to salespeople, advertising costs, and production costs in producing Real View's gross revenue.  Deductible expenses need not be proven in minute detail, but Real View must prove in at least general terms how the claimed categories of overhead deducted actually contributed to the production, distribution, or sale of the allegedly infringing product.  The proof of Real View's expenses must be adequate to determining whether the expenses are legitimate.  Any doubts that you have about the proof provided regarding deductible expenses must be resolved in favor of 20-20.[49]

---

[49] Design v. K-Mart Apparel Corp, 13 F.3d 559, 564 (2d Cir. 1994); Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 609 F. Supp. 1307, 1322 (E.D. Penn 1985), ), aff'd in part, vacated in irrelevant part, 982 F.2d 693 (2d Cir. 1992); 9th Circuit Model Civil Jury Instructions 17.24; William F. Patry, Patry on Copyright, §22:140 (22-238 – 22:239), (Thompson Reuters/West, 9/2009).
.

## COPYRIGHT INFRINGEMENT
## INSTRUCTION NO. 25 - APPORTIONMENT

In measuring the amount of Real View's revenues, if any, you conclude were attributable to infringement, the amount of those damages must be apportioned to reflect what was a result of the infringing conduct.

Apportionment is appropriate where the infringing work contains identifiable and quantifiable original elements that were not copies from the copywritten work.  In other words, the apportionment of damages must reflect only that scope of infringement.  In addition, to properly apportion damages it must be determined whether and how much of a role the infringed materials played in the customer's decision to purchase Real View's product.  If Real View has added value to the work through independent creation, if the infringed material is only a small portion of the program, or if customers chose to purchase ProKitchen for reasons independent of any infringement, you should award a correspondingly smaller amount of damages to 20-20. Apportionment is appropriate even if infringing and noninfringing aspects of a work are not wholly separate from each other. [50]

---

[50] John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26 (1st Cir. 2003)( "The caselaw is clear on this point: there must be a rational apportionment of profits" although such division of profits "does not require 'mathematical exactness.'"), citing Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th Cir.1988) (apportionment required where film "Rear Window" infringed underlying short story, but also earned profit from reputations and creative contributions of many others, including Grace Kelly, James Stewart, and Alfred Hitchcock), Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 404, 60 S.Ct. 681, 84 L.Ed. 825 (1940) (requiring apportionment where movie infringed parts of play, but added other content, as well as costumes, scenery, and the like), and Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147(1st Cir. 1994)(remanding case for lack of express jury instruction regarding apportionment); Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 933 (7th Cir. 2003); Computer Assocs. Int'l, Inc. v. Altai, Inc., 775 F. Supp. 544, 569-70 (E.D.N.Y. 1991), aff'd in part, vacated in irrelevant part, 982 F.2d 693 (2d Cir. 1992); Bruce v. Weekly World News, Inc., 310 F.3d 25, 31-32 (1st  Cir. 2002).

**COPYRIGHT INFRINGEMENT**
**INSTRUCTION NO. 26 - NO PUNITIVE DAMAGES**

Even if you find that the conduct of Real View was wrongful or violated 20-20's rights, you may not award damages to punish or make an example of Real View.  Damages may only be awarded to compensate 20-20 for its loss, injury, or damage it actually suffered as a direct result of Real View's acts.[51]

---

[51] On Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001); Faulkner v. National Geographic Soc., 576 F.Supp.2d 609, 612-13  (S.D.N.Y. 2008); Budget Cinema, Inc. v. Watertower Assoc., 81 F.3d 729, 733 (7th Cir. 1996); Bruce v. Weekly World News, Inc., 150 F. Supp. 2d 313, 321 (D. Mass. 2001)

**TRADE DRESS**
**INSTRUCTION NO. 27 - DEFINITION OF TRADE DRESS**

The trade dress of a product may refer to packaging of a product or the design and appearance of the software itself.   In this case, 20-20 is seeking trade dress protection for the design and appearance of its software 20-20 Design.  Trade dress only protects the the non-functional physical detail and design of a product, which indicates the product's source and distinguishes it from the products of others.[52]

In this case, for 20-20 to establish trade dress protection for the product design and configuration of its software 20-20 Design, it must establish that its trade dress is: (1) used in commerce; (2) non-functional, meaning that it is not necessary or essential to the product's use or purpose; (3) that the alleged protected trade dress is distinctive, meaning whether the product or design has achieved secondary meaning in the minds of the public; and (3) that Real View's use of similar trade dress in its software ProKitchen, if any, is likely to cause confusion.[53]

---

[52] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.1.1 (2008).
[53] Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 99 F. Supp. 2d 140, 151, 152-154 (D. Mass. 2000) (citations omitted).

**TRADE DRESS**
**INSTRUCTION NO. 28 - PRODUCT DESIGN OR CONFIGURATION TRADE DRESS**

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of a product. The functional aspects of a product's design or configuration are not protectable trade dress. To determine whether a particular product design or configuration is protectable, you must consider the totality of these non-functional aspects rather than considering each aspect separately.[54]

---

[54] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.1.3 (2008).

**TRADE DRESS**
**INSTRUCTION NO. 29 - PROTECTABILITY OF PRODUCT DESIGN OR**
**CONFIGURATION TRADE DRESS**

Trade dress is only protectable in cases of product design or configuration if it has acquired secondary meaning. To establish secondary meaning, 20-20 must show that in the minds of the public, the primary significance of a product feature or term is to identify the source of the product, i.e. the company that made it, rather than the product itself.[55]

20-20 has the burden of establishing that its product has acquired secondary meaning.[56] In order to establish that a product has acquired secondary meaning, 20-20 must make a vigorous evidentiary showing.[57]  In other words, 20-20 must show that a substantial portion of the public, would associate 20-20's product design or configuration with 20-20.[58] You may consider the following evidence when determining whether the product design or configuration of 20-20 Design has attained secondary meaning: (1) the length and manner of its use; (2) the nature and extent of advertising used to draw the attention of the public to the specifically alleged trade dress; and (3) the efforts made in the direction of promoting a conscious connection in the public's mind between the trade dress and the particular product.[59]

Evidence of intentional copying does not establish secondary meaning when the copier is attempting to recreate particularly desirable features, rather than seeking to confuse consumers as to the source of the product.[60]

---

[55] Yankee Candle, 99 F. Supp. 2d at 153, citing I.P. Lund, 163 F.3d at 41-42.
[56] Id. at 154.
[57] Id. at 153.
[58] Id. at 154.
[59] Id. at 154; ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.2.5 (2008).
[60] Yankee Candle, 259 F.3d at 45, citing Duraco v. Joy Plastic Enterprises, 40 F.3d 1431, 1453 (3rd Cir. 1994).

**TRADE DRESS**
**INSTRUCTION NO. 30 - NON-FUNCTIONALITY**

Only non-functional trade dress is protectable.

The term "functional" has a specific meaning in trade dress law. Trade dress is not considered "functional" merely because the trade dress, or its components, perform useful functions. Thus, for example, all bottles perform the function of holding a liquid, but this does not mean that the specific design chosen for a bottle is necessarily considered "functional" and unprotectable.[61]

A design feature of a product is considered "functional" and thus unprotectable as trade dress if that design feature is essential to the use or purpose of the product or if it affects the cost or quality of the product.[62]  Put another way, a feature is functional if the product works better because of that particular feature, such as a shape, texture, color design, etc.

In determining whether 20-20's trade dress is functional, you should consider the trade dress as a whole. To establish that its product design or configuration is non-functional, 20-20 must show that the arrangement of features is arbitrary to qualify for trade dress protection.[63] However, where the combination as a whole is functional, the trade dress is not protectable.[64]

---

[61] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.2.6 (2008).
[62] Straumann, 278 F. Supp. 2d at 133.
[63] Id. at 133-34.
[64] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.2.6 (2008).

**TRADE DRESS**
**INSTRUCTION NO. 31 - ELEMENTS OF TRADE DRESS INFRINGEMENT**

To prevail on its claim of trade dress infringement, 20-20 must establish by a preponderance of the evidence the following two elements:

1.      Protectability: The public must recognize 20-20's trade dress as identifying its software and distinguishing them from those of others.  I have previously instructed you in more detail regarding the factors you should consider in determining the issue of protectability.

2.      Likelihood of Confusion: Real View's trade dress must be likely to cause confusion in the marketplace between 20-20's program 20-20 Design and Real View's program ProKitchen. I will now instruct you in more detail regarding the factors you should consider in determining the issue of likelihood of confusion. [65]

---

[65] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.3.1 (2008).

**TRADE DRESS**
**INSTRUCTION NO. 32 - LIKELIHOOD OF CONFUSION**

In addition to protectability, 20-20 must also show "likelihood of confusion" to prevail on its claim of trade dress infringement. You must decide whether there is a likelihood of confusion resulting from the total image and impression created by the Real View's trade dress in the eye and mind of the ordinary purchaser of kitchen design software. In making this determination, you may rely on the general knowledge you have acquired throughout your lifetimes, including your common experience as citizens of the community.  In addition, you must consider each of the following factors:[66]

(1) the similarity of 20-20's and Real View's trade dress;

(2) the similarity of 20-20's and Real View's product;

(3) the relationship between the parties' channels of trades;

(4) the relationship between the parties' advertising;

(5) the classes of prospective purchasers;

(6) evidence of actual confusion;

(7) Real View's intent in adopting the trade dress; and

(8) the strength or weakness of 20-20's trade dress.[67]

Although you should consider all of the above factors as part of making your decision, the above list is not intended to be exclusive and you should consider any other factors or evidence that bear on likelihood of confusion. In considering these factors, your general knowledge, and any other evidence, you should not treat any single factor as dispositive; nor

---

[66] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.3.2 (2008).
[67] Calamari Fisheries Inc. v. The Village Catch, Inc., 698 F. Supp. 994, 1009 (D. Mass. 1988) (citations omitted).

should you treat this as a simple mathematical exercise where the party with most of the above factors in its favor wins. In other words, while you should consider all the above factors, some factors may be more important than others in the context of this case. Thus, you should balance all the above factors and any other relevant factors or evidence to determine whether—in light of all the circumstances of this case—consumers are likely to be confused.[68]

Likelihood of confusion does not mean a possibility of confusion, but a probability of confusion.[69]  It is less likely that a customer will be confused about the product's origin if the purchaser is sophisticated or the product is expensive.[70]  Anecdotal evidence of customer confusion is insufficient to establish the likelihood of confusion.[71]  The customer confusion, if any, must occur at the time of sale and not merely upon initial interest in the product.[72]

---

[68] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.3.2 (2008).

[69] Nora Beverages v. Perrier Group of America, 269 F.3d 114, 121 (2d Cir. 2001); Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d  739, 743 (2d Cir. 1998).

[70] Fisher Stoves, Inc. v. All Nighter Stove Works, 626 F.2d 193, 194-95 (1st Cir. 1980).

[71] Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F. 2d 162, 169 (2d Cir. 1991).

[72] Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207-08 (1st Cir. 1993) (limiting confusion analysis to time of purchase); Benchmark v. Benchmark Builders, Inc., No. CIV. 00-151-PH, 2000 WL 1886570, at *6 (D. Me. Dec. 29, 2000) ("[T]he First Circuit, while not expressly rejecting the doctrine of initial-interest confusion, has indicated that confusion must be found likely at point of purchase to be actionable under Lanham Act.").

**TRADE DRESS**
**INSTRUCTION NO. 32 - DAMAGES FOR TRADE DRESS INFRINGEMENT**

I am going to provide you with details on the calculation of damages. All of these instructions apply only if you find that Real View has in fact infringed upon 20-20's trade dress. The fact that I am giving you these instructions should not be taken as an indication that an infringement has taken place. They are to be used only in the event you make a specific finding that Real View has in fact infringed on 20-20's trade dress.[73]

If 20-20 prevails on its claim for trade dress infringement, you may award 20-20 damages only if it has proven actual consumer confusion resulting from Real View's infringement or that Real View's actions were intentionally deceptive, thereby giving rise to a rebuttable presumption of consumer confusion. [74]

If 20-20 has established actual consumer confusion or intentional deception by Real View, it is your duty to determine 20-20's damages. The burden is on 20-20 to prove damages by a preponderance of the evidence. Damages are the amount of money that will reasonably and fairly compensate 20-20 for any injury that you find was caused by Real View's infringement of 20-20's trade dress, and not other factors. In calculating damages you should consider 20-20's lost sales and profits that are attributable to Real View's infringement.[75]

Proof of damages to a certainty is not required. However, the burden is on 20-20 to show any damages to a reasonable certainty, and awarded damages may not be speculative.[76]

---

[73] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.6.1 (2008).
[74] Id.
[75] Id.
[76] Id.

**TRADE DRESS**
**INSTRUCTION NO. 33 - LOST SALES AND LOST PROFITS**

20-20 is entitled to recover monetary damages, measured by its profits lost as a result of the infringement, when this amount can be determined with reasonable certainty. If Real View's infringement has resulted in lost sales to 20-20, then 20-20 is entitled to recover the profit it would have obtained if it had made the sales.

20-20 has the initial burden to demonstrate, using credible evidence, a reasonable basis from which 20-20's lost profits may be determined.[77]

---

[77] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.6.3 (2008).

**TRADE DRESS**
**INSTRUCTION NO. 34 - REAL VIEW'S PROFITS**

20-20 is entitled to recover Real View's profits resulting from its infringement of 20-20's trade dress. You may award 20-20 both actual damages and Real View's profits only when Real View's profits are not derived from the same lost sales claimed by 20-20 as actual damages.

Real View's profits are determined by deducting expenses from the gross sales revenue of its infringing product. Gross sales revenue is the sales receipts from sales of the infringing product. 20-20 has the burden of proving Real View's gross sales revenue by a preponderance of the evidence. All sales proven by 20-20 are presumed to be attributable to Real View's infringement. However, Real View may rebut this presumption if it proves, by a preponderance of the evidence, that particular sales and their profits were not the result of the infringement. That is, Real View must show that the particular sale(s) resulted exclusively from intrinsic qualities of Real View's software and not from the use of 20-20's trade dress.

It is also the Real View's burden to prove, by a preponderance of the evidence, deductions from gross sales, including overhead, salaries, operating expenses, materials, and labor. Such proof need not be precise. Reasonable approximations constitute satisfactory evidence. However, if Real View fails to offer proof sufficient to meet its burden, Real View's entire gross revenues from sales of the infringing software should be awarded as damages.[78]

---

[78] ABA Model Jury Instructions: Copyright, Trademark and Trade Dress Litigation §3.6.6 (2008).

## COMMON LAW UNFAIR COMPETITION
## INSTRUCTION NO. 35 - ELEMENTS OF COMMON LAW UNFAIR COMPETITION

20-20 has also asserted a claim against Real View for common law unfair competition. The claim for unfair competition is essentially the same as 20-20's claim for trade dress infringement.[79]   The common law tort of unfair competition derives from creating consumer confusion regarding the source of goods or services.[80]   In order to prevail on its claim of unfair competition, 20-20 must prove by a preponderance of the evidence that:

1.  the public recognizes 20-20's trade dress in connection with the sale of its goods as identifying its products and distinguishing them from those of others;

2.  such recognition occurred before Real View entered the kitchen design software market;

3.  Real View used trade dress in a manner likely to cause confusion as to the source of the goods among persons using ordinary care and prudence in the purchase of such goods; and

4.  20-20 was harmed by Real View's actions.[81]

In order for 20-20 to establish its claim for unfair competition, you must find that 20-20's trade dress is nonfunctional, has secondary meaning, and that there was likelihood of confusion between 20-20's and Real View's kitchen design software as a result of the Real View's use of 20-20's protected trade dress.[82]   I previously explained in detail these elements to you.

---

[79] Pic Design Corp. v. Bearings Specialty, 436 F.2d 804 (1st Cir. 1971)
[80] Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 769 (1986).
[81] Massachusetts Continuing Legal Education, Massachusetts Superior Court Civil Practice Jury Instructions, §12.6.1 (2nd Ed. 2008).
[82] Id., §§12.6.2 – 12.6.4, §§15.3.4 – 15.3.6.

**COMMON LAW UNFAIR COMPETITION**
**INSTRUCTION NO.  36 – DAMAGES**

If 20-20 has proven its claim for unfair competition, you may award damages for the amount of goodwill lost as a result of Real View's conduct.

The goodwill of a company is an intangible business value which reflects the basic human tendency to do business with merchants who offer products of the type and quality the customer desires and expects.  Service to the customer, and a willingness to stand behind a warranty and other representations about the quality of the products sold by a merchant, are factors that help establish the goodwill of a business.

The goodwill attached to a product is a part of the overall business value which is the goodwill of the company.  It is possible, therefore, that the general goodwill of a corporation may be damaged by the loss of goodwill to a particular product.  Whether this has occurred is a question of fact for you to determine.

If you find that Real View has damaged 20-20's goodwill, either by injury to its business reputation or by damage to its product 20-20 Design, you may assess such compensatory damage to 20-20 has shown through its evidence.  The measure of 20-20's damage is the difference between the value of such goodwill before and after the acts of Real View.[83]

---

[83] Massachusetts Superior Court Civil Practice Jury Instructions, §12.6.5.

**INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS
INSTRUCTION NO. 37 - ELEMENTS OF INTENTIONAL INTERFERENCE WITH
ADVANTAGEOUS RELATIONS**

20-20 claims in this case that it had actual or prospective business relationships with certain customers or possible customers and that Real View improperly interfered with those business relationships.

In order for 20-20 to succeed on its claim for intentional interference with advantageous relations, it must establish by a preponderance of the evidence each of the following four things:

1. it had an advantageous relationship with a third party or parties with the probability of future economic benefit;

2. that Real View knew about 20-20's business relationship with that third party or parties and intentionally induced or caused that third party or parties not to enter into or continue the business relationship, or prevented 20-20 from acquiring or continuing the business relationship;

3. Real View's interference with the business relationship, in addition to being intentional, was improper in motive or means; and

4. 20-20 was actually harmed by the Real View's actions. [84]

---

[84] <u>Encompass Ins. Co. of MA v. Giampa</u>, 522 F. Supp. 2d 300, 314 (D. Mass. 2007), <u>citing</u> <u>Blackstone v. Cashman</u>, 448 Mass. 225, 260 (2007).

**INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS
INSTRUCTION NO.  38 - EXISTENCE OF PROSPECTIVE BUSINESS
RELATIONSHIP**

In order to show that it had a prospective business relationship, 20-20 may not speculate about future business relationships only a probable future business relationship anticipating a reasonable expectancy of financial benefit is sufficient.[85]   20-20 must show this expected benefit with some degree of specificity, demonstrating that it was a realistic expectation, but need not show reasonable expectation of future economic benefit with certainty.  The law requires more than a mere hope; instead a reasonable likelihood or probability must be established.[86]

---

[85] Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 48 (1st Cir. 2002).
[86] Massachusetts Superior Court Civil Jury Instructions, §12.5.2, citing Powers v. Leno, 24 Mass. App. Ct. 381, 385 (1987).

## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS
## INSTRUCTION NO. 39 – DAMAGES

If you find for 20-20 on its claim for intentional interference with advantageous relations, you may award 20-20 an amount that you believe, from the evidence, will fairly and reasonably compensate 20-20 for the damage, if any, it sustained because of Real View's acts.  Lost profits are the usual measure of damages in an intentional interference action.[87]  20-20 must demonstrate by a preponderance of the evidence either historic profitability or the actual existence of future contracts, which were lost due to Real View's conduct, and the value of which can be readily discerned.[88]

---

[87] Korpacz  v. Women's Professional Football League, Civ. Act. No. 04-10735-RWZ, 2006 WL 220762, *3 (D. Mass. Jan. 27, 2006).

[88] Id.; Massachusetts Superior Court Civil Jury Instructions, §12.5.3.