UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REAL VIEW, LLC,<br><br>      Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>20-20 TECHNOLOGIES, INC.,<br><br>      Defendant and Counterclaim Plaintiff<br><br>BORIS ZELDIN and LEONID PERLOV,<br>Additional Party Defendants in Counterclaim. | CIVIL ACTION NO. 07-12157-PBS |

**REAL VIEW LLC, BORIS ZELDIN AND LEO PERLOV'S RESPONSE TO 20-20 TECHNOLOGIES, INC.'S ELECTION OF NEW TRIAL**

Real View LLC, Boris Zeldin and Leo Perlov (collectively "Real View") respectfully submit this response to 20-20 Technologies, Inc.'s Election of New Trial. (ECF No. 257).

20-20's Election asks the Court to reopen discovery to permit the parties to retain new experts on "the value of a hypothetical unlimited license to use 20-20 Design" and on the "causal link" between the download and 20-20's price erosion damages. 20-20 also asks the Court to permit document discovery and party depositions intended to support 20-20's theory of "saved development costs."

20-20's Election is not a motion. Presumably, 20-20 will file a formal motion requesting that discovery be reopened. However, to the extent the Court considers 20-20's request to reopen discovery based on the Election, Real View vehemently opposes the request for the following reasons.

1.      As described in Real View's Motion for New Trial, and un-rebutted by any record references by 20-20, 20-20's "hypothetical license fee" and "saved costs" theories were not disclosed until close to the end of the first trial.  (ECF 239, pp. 7-9).   20-20 does not deny that it never disclosed these theories in its initial disclosures, interrogatories, expert reports, jury instructions or pre-trial briefs.[1]

2.      The parties requested that the Court extend fact discovery on April 13, **2009**.  (ECF No. 22).  The Court denied that motion the *very next day*, April 14, **2009**.  Now, 2 1/2 years later, following trial, 20-20 is asking the Court to reopen fact discovery to permit document discovery and depositions so that 20-20 can make a case for damages that 20-20 disclosed for the first time after the close of evidence at trial.  It was too late to do this 30 months ago, and it is too late now.

3.      20-20's attempt to introduce new damages experts at this time is subject to automatic exclusion under Fed. R. Civ. P. 37(c)(1), which  "requires the near automatic exclusion of Rule 26 information that is not timely disclosed."  Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 20-21 (1st Cir. 2001).  *See also* Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003).  20-20 did not disclose its "license fee" and "saved costs" theories until close to the end of trial, far too late too satisfy this rule.

4.      Retrying damages based on 20-20's new "license fee" and "saved costs" theories will require Real View to engage in a massive discovery effort before the second trial.  Real View will have to retain a licensing expert to write a report and testify on benchmark licenses under the unusual fact pattern of this case -- a license to *see*, but not *copy*, a software program.

---

[1] In 20-20's Opposition to Real View's motion for new trial, 20-20 states that it cited "a preeminent value of use copyright case" in its Trial Brief.  (ECF No. 245, p. 8). The 20-20 brief that contains the citation is ECF No. 154. The case is *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2nd Cir. 2001), which is cited at page 44 of the 20-20 brief. However, 20-20 cited this case for copyright principles *other than* damages based on "value of use."

760846.1

Real View will have to retain an expert on software design and development costs to rebut 20-20's damage claims on "saved costs."

Real View will have to conduct discovery of 20-20 -- document discovery and depositions -- to determine whether the 20-20 Design v. 6.1 software interface was, as almost certainly was the case, free for all to see at shows and in demonstrations. As 20-20's executive admitted at trial, the default (or opening screen) of 20-20 Design is "the heart of 20-20 Design v. 6.1" and "pretty much what this case is about." (Trial Tr. Day 2, p. 81). Real View will now be required to determine through discovery whether anyone could view the "default" screen at the annual "KBIS" trade shows, customer demonstrations and in the uncopyrighted 20-20 videos. Real View will have to find witnesses to testify that there were no restrictions on viewing the default screen of 20-20 Design.

Real View has already shown that the interface was available, without restriction, in a manual on 20-20's web site.

If anyone could see the default screen of 20-20 Design v. 6.1 -- as Real View believes discovery will show -- the "value" of a license to see the layout to that screen as part of the creation of a *non-infringing* program, is next to nothing. This discovery and evidence was not necessary before the first trial, since 20-20's liability and damages theories were based solely on a theory of copyright *infringement*, and therefore access was irrelevant.

The discovery necessary to prepare for a trial of this magnitude will be extraordinarily expensive and time-consuming for Real View, which is one one-hundredth the size of 20-20 based on revenues. It is likely to equal or exceed the cost and trial time for the first trial. Given 20-20's inexcusable attempts to introduce these damages theories based on incorrect representations of the law to the Court at the last minute *during* trial, along with 20-20's failure

3

to introduce any evidence to support them *at* trial, the Court should reach the obvious conclusion: this admitted monopolist's request to permit discovery on this wide range of new issues has a single motive, and that is to force Real View to defend itself in the courtroom, in order to weaken it in the marketplace.

5. 20-20 cites a single case in support of its request that the Court reopen discovery -- *Colony Cadillac & Oldsmobile, Inc. v. Yerdon*, 558 A. 2d 364 (Me. 1989). 20-20 cites this *state law* case as "D. Me.", giving the impression this state-law case was decided under federal law. In fact, it is a state law case, decided under the Maine rules of civil procedure.

This non-federal case is completely inapposite. <u>First</u>, it was decided in the context of a remand on appeal and retrial, and was on appeal for the second time, following the second trial. The case at bar is not on remand from an appellate court. <u>Second</u>, in the first appeal, the case had been remanded for a new trial, and the trial court had reopened discovery on "the same issue we had just held the trial court had erroneously excluded at the first trial." The trial court had "permit[ed] the reopening of discovery on the very issue that led to the remand for a new trial." *Yerdon*, *supra*, 558 A. 2d at 366. There has been no trial court error that would justify reopening discovery in this case. <u>Third</u>, the appellant (who was complaining that the trial judge had reopened discovery following remand and before the second trial), had failed to seek a protective order from the discovery it was complaining of in the second appeal, thereby waiving its right to complain on appeal. *Id*. In contrast, Real View *does* object to the reopening of discovery here. Real View will do so in opposition to any motion properly filed by 20-20 and, unlike the appealing party in *Yerson*, will seek a protective order should 20-20 serve it with discovery not authorized by the Court.

4

760846.1

6.      The *federal* courts regularly deny new claims, new legal theories and new discovery on remand from an appeal or prior to a new trial under Fed. R. Civ. P. 59(a), *unless* further discovery is necessary to meet a new controlling standard that arose after the plaintiffs initiated their case.  *See, e.g.*, *Level 3 Communications, LLC v. City of St. Louis*, 540 F. 3d 794, 796-97 (8th Cir. 2008) (distinguishing cases where party made a strategic decision to litigate its case based on a certain theory, from cases where remand occurs "along with a mandate for further discovery to meet a new controlling standard that arose after the plaintiffs initiated their case").  That is not the case here.

In cases such as the present one -- where there was no error by the *court* in the first trial and the remand does not mandate further discovery (in this case there is no "remand") --  the courts invariably <u>refuse</u> to give a party the proverbial "second bite at the apple."  *See, e.g., E.I. Du Pont DeNemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1212 n. 24 (D. Del. 1989) (refusing to reopen record on remand, noting that "while [defendant] **naturally would like to bolster its position now with its hindsight** benefited by this Court's earlier opinion and that of the Federal Circuit, free permission of this practice would result in **endless litigation**") (emphasis added); *Villenkamp v. DAvisco Foods International, Inc.*, 2009 U.S. Dist. LEXIS 98571 (D. Id 2009) ("there is no reason why the plaintiffs could not have retained an expert on damages prior to the first trial. . . . **Cases are not ordinarily remanded in order to give a party the opportunity to supply evidence missing from the first trial**") (emphasis added); *Bookland of Maine v. Baker, Newman & Noyes, LLC*, 271 F. Supp. 2d 324 (D. Me. 2003) ("It is too late for the lawyers to determine, **now that they have seen what happened at the first trial**, that **they would like some more information** before they conduct the second (partial) trial on damages"); *Total Containment, Inc. v. Dayco Products, Inc.*, 177 F. Supp. 2d 332, 339 (E.D. Pa. 2001)

("[plaintiff] now seeks to proffer new theories after making **a tactical decision not to do so at the prior trial**. . . . [plaintiff] entirely neglected to introduce evidence regarding development costs at the original trial. The wisdom of [plaintiff's] tactical decision is best left to [plaintiff], but **a plaintiff omits evidence necessary to sustain its damage award at its peril** . . . [plaintiff] had an adequate opportunity during three years of discovery and a five week trial to explore damages relating to the development of the new pipe, but simply chose not to do so"); *Whitehead v. K Mart Corp*, 173 F. Supp. 2d 553, 565 (S. D. Miss. 2000) (refusing to permit defendant conduct discovery "which could easily have been pursued prior to the first trial of this case").

These cases apply here: 20-20 could have pursued its "hypothetical license fee" theory and its "saved cost" theory at the first trial - in fact, it tried to do so, albeit with no experts and no evidence. Instead, 20-20 made the "tactical decision" to pursue damages based on its theory that Real View's software infringed 20-20 Design. That theory failed, and now 20-20 is seeking to "bolster its position with hindsight." It wants to "supply evidence missing from the first trial" through no fault but its own.

The result of 20-20's request to reopen discovery will result in manifest injustice to Real View, and perpetuate 20-20's attempt to crush Real View not in the marketplace -- where, the results of this case thus far show Real View is creating fair and much-needed competition for a monopolist -- but in the courtroom.

As the First Circuit stated one month ago, "[r]ules are essential for the orderly processing of litigation, and a party's disregard of a rule, without good cause, ought not to be condoned." *City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 2011 U.S. App. LEXIS 18115 (1st Cir. Mass. Aug. 31, 2011). 20-20's attempt to have a totally new case rise, Phoenix-like, from the ashes of its failed case, based on new theories and new discovery,

6

760846.1

shows disregard, without good cause, for the most basic rules of civil litigation. 20-20's expected response -- that it cannot prove these new theories without additional experts and discovery -- does not change the result. "Failure to adduce evidence adequate to sustain a judgment is generally fatal." *Natural Res. Def. Council v. Texaco Ref. & Marketing*, 2 F.3d 493, 504 (3d Cir. 1993). All litigants, including 20-20 Technologies, live by this rule.

Respectfully submitted,

REAL VIEW LLC, BORIS ZELDIN
AND LEONID PERLOV

By their attorneys,

/s/ Lee T. Gesmer                .
Lee T. Gesmer, BBO #190260
Joseph J. Laferrera, BBO #564572
Nancy M. Cremins, BBO #658932
Crystal L. Lyons, BBO #677931
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone: (617) 350-6800
Facsimile: (617) 350-6878
email: lee.gesmer@gesmer.com

## Certificate of Service

I hereby certify that on September 28, 2011, I electronically filed the foregoing with the Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECT users and that service will be accomplished by the CM/ECF system.

/s/ Lee T. Gesmer             
Lee T. Gesmer

760846.1