**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REAL VIEW, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>20-20 TECHNOLOGIES, INC.,<br><br>   Defendant. | CIVIL ACTION NO. 07-12157 |
| 20-20 TECHNOLOGIES, INC.,<br><br>   Counterclaim-Plaintiff,<br><br> v.<br><br>REAL VIEW, LLC,<br><br>   Counterclaim-Defendant, and<br><br>BORIS ZELDIN and LEONID PERLOV,<br><br>   Additional Party Defendants<br>   in Counterclaim. | |

**20-20 TECHNOLOGIES, INC.'S MEMORANDUM
IN SUPPORT OF A MOTION TO REOPEN LIMITED DISCOVERY AND DESIGNATE
<u>A NEW EXPERT ON THE VALUE OF USE DAMAGES</u>**

20-20 Technologies, Inc. ("20-20") respectfully submits this memorandum in support of its Motion to Reopen Limited Discovery and Designate a New Expert on the Value of Use Damages.

**I. Introduction**

In its September 21, 2011 Order, the Court held that a "license without restrictions would be worth considerably more" than the $4,200 price for a standard restricted license for the 20-20 Design and that "20-20 now has the choice of a new trial or acceptance of remittitur." (Memorandum and Order at p. 16, Dkt. 255, Sept. 21, 2011.) 20-20 made its choice and elected a new trial on damages. Recognizing that a "number of complex legal questions . . . were never

fully addressed by the parties before the end of [the first] trial" (Memorandum and Order at p. 3), 20-20 now requests to reopen for 90 days **limited** fact discovery on the issues related solely to the illegal download of 20-20 Design.  20-20 also asks the Court to allow it to designate a new expert to testify on the value of a hypothetical unlimited license to use 20-20 Design.

Limited fact discovery relating to Real View's download and use of 20-20 Design and related tutorial videos will not add complexity to the case or make the case significantly more expensive.  To the contrary, 20-20 will request Real View to produce a relatively small number of documents largely comprised of communications between Real View and its Ukranian developers that should be readily available, and to make Defendants Perlov and Zeldin available for one additional deposition each to testify regarding those actions and documents.  Specifically, the discovery that 20-20 plans to requests will finally shed the light on all the details surrounding the illegal download of the 20-20 Design, Boris Zeldin and Leo Perlov's use of the illegal copy in their communications with the development team in Ukraine (i.e., any written instructions, memoranda, and email communications), and the cost and circumstances surrounding the development of ProKitchen (namely, the use of the illegal copy in the development, as well as the number of employees and the time it took to develop ProKitchen).

20-20 also requests the Court to allow it to designate a new expert witness whose testimony will be limited solely to calculating the fair market value of an unlimited license to use 20-20 Design in the manner that Real View used it.

Without further discovery, Real View, an admitted infringer, may escape without adequately compensating 20-20 for the value of unrestricted use of 20-20 Design to build a competing business.  Absent additional limited discovery on the circumstances surrounding the illegal download, Real View will continue to make unsupported claims during a new trial such

that its use involved "a license to *see*, but not *copy*, a software program" (Real View LLC, Boris Zeldin and Leo Perlov's Response to 20-20 Technologies, Inc.'s Election of New Trial at p. 2, Dkt. 259, Sept. 28, 2011).  Absent new expert testimony, the jury and the Court will be forced to speculate about the value of use damages owed to 20-20 for Real View's admittedly illegal taking of the 20-20 Design.

II.     **In the Interests of Fairness and Substantial Justice, the Court Should Reopen Discovery For the Limited Purposes Identified by 20-20 and Permit New Expert Testimony on the Value of Use Damages**

The Court has discretion to allow "additional witnesses and relevant proof" at a new trial. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co.*, 195 F.3d 765, 775 (5th Cir. 1999).  In rendering its decision, the Court must be guided by considerations of fairness to the parties.  *Total Containment, Inc. v. Dayco Prods., Inc.*, 177 F. Supp. 2d 332, 339 (E.D. Pa. 2001) (allowing the party to "improve upon its case" by introducing new evidence at a new trial related to lost profits damages and holding that "it would be unfair to prevent [a party] from expanding upon evidence which it previously introduced").[1]  Moreover, the district courts "must fairly balance the . . . venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits."  *Garcia-Perez v. Hospital Metropolitano*, 597 F.3d 6, 7 (1st Cir. 2010) (reversing the district court's dismissal of

---

[1] While the *Total Containment* court allowed TCI to introduce at a new trial evidence of lost sales, it prohibited the introduction of evidence of costs associated with the development of its own brand of primary pipe because TCI "entirely neglected to introduce evidence regarding development costs at the original trial."  *Id*. at 339.  Here, 20-20 did introduce evidence going to the value of the hypothetical license, including testimony regarding the "millions and millions" of dollars expended in developing 20-20 Design and the $38 million expended to acquire Planit Fusion.  The testimony 20-20 now seeks to develop will enlarge upon issues already presented in the first trial as opposed to introducing an entirely new concept that was not tried before.

3

the case with prejudice for failure to timely produce an expert report).  *See also Benitez-Garcia v. Gonzales-Vega*, 468 F.3d 1, 5 (1st Cir. 2006) (same).

*Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891 (3d Cir. 1975) is closely on point.  In *Rochez*, the appellant argued that the district court, on remand dedicated solely to the calculation of damages, incorrectly valued the restricted stock that was part of the damage amount.  Specifically, the appellant insisted that the calculation was erroneous because there was no evidence in the record that could establish the value of the restricted stock.  The Third Circuit concluded that "Rochez failed to place into evidence all the necessary elements for an accurate determination of damages," and that "[f]ailure to put into evidence all the proof necessary for sustaining a judgment is generally fatal." *Id*. at 894.  The court, however, allowed a remand to take additional testimony to assist in correcting the calculation of damages because the injury to Rochez had been shown and liability had been conclusively established:

> [A] remand is sometimes necessary where it would insure **substantial justice**.  Here, **injury has plainly been shown** and **liability has been conclusively established.**  Damages have substantially been determined with the exception of the Esterline stock . . . . It seems to us that it is better that a court weigh evidence on this matter as presented to it by experts rather than speculate as to what factors are, or can be considered.
>
> Accordingly, we remand this case to the district court with instructions to take further testimony only regarding the correct discount factors that would apply to the Esterline restricted stock.

*Id*. at 894 (emphases added).

Here, like in *Rochez,* "liability has been conclusively established" because Real View conceded long before the first trial that it stole a copy of 20-20 Design.  Again similar to *Rochez*, injury to 20-20 has plainly been shown, and the only question remaining is the *amount* of damages owed to 20-20, not whether 20-20 is entitled to any damages.  (*See, e.g.,* Memorandum

4

and Order at p. 2, Sept. 21, 2011 ("Real View admitted at trial that it would have been charged at least that amount [$4,200] for the value of the license with restrictions. A license without restrictions would be worth considerably more.").) As *Rochez* teaches, reopening limited discovery to permit expert testimony on the value of a hypothetical unrestricted license "would insure substantial justice" because "it is better that a court weigh evidence on this matter as presented by experts rather than speculate." 527 F.2d at 895.

### III. Real View's Arguments Against Reopening Limited Discovery and Designating a New Licensing Expert Are Without Merit

Real View's "vehement" opposition to 20-20's request boils down to two main arguments, neither of which warrant a finding in Real View's favor. First, Real View asks this court not to reopen discovery because Real View is "one one-hundredth the size of 20-20 based on revenues." (Real View LLC Response to 20-20's Election of New Trial at p. 3.) The accuracy of revenue and size estimations aside, Real View attempts to convince this Court that discovery should not be reopened and new expert testimony should be rejected every time a non-moving party is small and/or unwilling to pay. However, the fact that additional discovery and new expert testimony may make the case slightly more expensive and more complex is not grounds for ruling in Real View's favor. *Hoffman v. Tonnemacher*, 2006 WL 3457201, at *3 (E.D. Cal. Nov. 30, 2006) (allowing to add a new infectious disease expert and limited fact discovery even though it made the case more expensive and complex; explaining that the "ultimate burden on causation remain[ed] the same irrespective" of the addition of a new expert).

Clearly, as *Hoffman*, *Martin's Herend*, *Rochez*, and *Yong v. Nemours Foundation*, 432 F. Supp. 2d 439 (D. Del. 2006) show, relative size of the parties is **not** among the criteria to be considered in deciding a motion to reopen discovery and/or to permit additional expert testimony at a new trial. The standard is based on considerations of fairness, substantial justice, and the

5

fundamental goal of deciding cases on the merits. Each of these guiding principles favors 20-20, and not the admitted infringer Real View.

Second, Real View suggests that if additional discovery is permitted, it will have to expend substantial time and money to develop evidence to show that the 20-20 Design default screen was available for the public to see during trade shows. (Real View LLC Response to 20-20's Election of New Trial at p. 3.) The argument is nonsensical. Real View has already stipulated that Perlov and/or Zeldin had "seen the 20-20 product at trade shows and at kitchen designers." (Trial Tr. Day Eight 82:3-4, Jan. 31, 2011.) Nevertheless, when it came time to create its copycat product, Real View downloaded an illegal copy of 20-20 Design. Why would Real View need to go to the pains of illegally downloading the program if they could obtain all the necessary information by looking at the default screen during a trade show? The obvious conclusion is that, to create a competing copycat product, Real View's owners needed a copy of the actual software that they could study, manipulate, show to its developers, and use to ultimately create ProKitchen. The fact that 20-20 displayed its software at trade shows cannot excuse Real View's illegal acts, and has no bearing on the issue of damages based on value of use.

Furthermore, even if all the information could have been obtained legally (by looking at the software during a trade show, by negotiating a license with 20-20, or otherwise), Real View cannot take refuge in such facts in order to excuse its choice to obtain access to 20-20 Design illegally. *See, e.g., Smith v. Dravo Corp.*, 203 F.2d 369, 375 (7th Cir. 1953) (emphasis added) (holding in a trade secret case that " [i]t is unquestionably lawful for a person to gain possession, through *proper means*, of his competitor's product . . . . But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the

6

information in usable form") (citing *Tabor v. Hoffman*, 23 N.E. 12, 13 (N.Y. 1889) ("because the discovery may be possible by fair means, it would not justify a discovery by unfair means")).

Finally, this argument is premised on a myriad of unsupported contentions: Real View only studied the interface, but did not reverse engineer; Real View only looked, but never copied; and so on. Guided by the fairness standard, the Court should permit limited additional discovery to answer these questions.

## IV. Additional Limited Discovery and Expert Testimony on Damages Should Be Allowed Because There Is No Prejudice or Surprise to Real View

Real View claims ambush, surprise, or prejudice in response to virtually every motion raised by 20-20. Real View's standard surprise claims notwithstanding, there was no surprise or prejudice to Real View before or during the first trial because it conceded liability months before the first trial commenced. (Real View LLC's Memorandum of Law in Support of its Motion In Limine at p. 8, Dkt. 110, June 2, 2010) (there are "no disputed facts with respect to liability and, subject to 20-20 providing a dollar amount reflective of its actual licensing fees, there will be no issue with respect to damages"); Trial Tr. Day Two 9:10-15, Jan. 19, 2011 (Real View's counsel stating that "what 20-20 is trying to do is bind us into a license").) There was also no surprise to Real View when the court instructed the jury on the value of use, and there was no surprise when the jury rendered its original verdict because **at no time** during the trial did Real View object to Jury Instruction 28 on the ground that it was unaware of 20-20's damages theories.[2] (Real View

---

[2] Regarding the attempts to yet again reargue the Rule 26(a) disclosure issue, Real View never raised a Rule 26(a) objection during trial, thereby *waiving* its right to complain about inadequate disclosure. *See Doctor John's v. Wahlen*, 542 F.3d 787, 790 (10th Cir. 2008) (a litigant's failure to make specific objections regarding inadequacy of disclosure under Rule 26(a) ordinarily constitutes a waiver); *Palmieri v. Celebrity Cruise Lines, Inc.*, 2000 WL 310341, at *6 (S.D.N.Y. Mar. 27, 2000) (failure to make a Rule 26(a) objection at trial prevented the defendant from raising the issue in a motion for a new trial; the court found no gross injustice because the plaintiff's testimony at trial "did not surprise defendant"); *Kasongo v. U.S.*, 523 F. Supp. 2d 759, 806 (N.D. Ill. 2007) (same).

7

LLC's Opposition to 20-20 Technologies, Inc. Proposed Additional Jury Instructions, Dkt. 204, Feb. 2, 2011; Trial Tr. Day Ten 162:11-25, Feb. 11, 2011.)  And there is no surprise now when 20-20 merely asks to reopen limited discovery to accurately calculate the amount of damages for Real View's admittedly illegal act.

Guided by the principles of fairness and substantial justice, the courts can reopen limited discovery and permit new expert testimony in advance of a new trial when there is no surprise and prejudice to the non-moving party.  *Yong v. Nemours Foundation*, 432 F. Supp. 2d 439 (D. Del. 2006); *White v. McDermott*, 2010 WL 4876025 (D. Conn. Nov. 19, 2010).

In *Yong,* the plaintiffs sought additional discovery and designation of two new medical experts on retrial.  The defendant objected and insisted that "the Yongs' request is an effort only 'to plug the holes' the Yongs perceive may exist in their case." 432 F. Supp. 2d at 441.  The court held "[t]here is no statute, rule, or case that prohibits a court from doing what the Yongs ask." *Id*. at 441.  With respect to allowing new expert witness testimony, "[a]lthough the Court believe[d] this request involve[ed] an effort by the Yongs to address a perceived weakness in their case, the Court [found] that Nemours [would] not suffer any undue prejudice." *Id*. at 442.  The court allowed designation of two new expert witnesses as well as satisfied nearly all of the plaintiffs' additional discovery requests.

"[G]uided by considerations of fairness and justice to all parties," the *White* court held that the "Defendant was on notice of Plaintiff's claim that his dog's actions resulted in Plaintiff's cellulitis.  Thus, Defendant would not be prejudicially surprised by the subject matter of an expert on cellulitis for retrial." *Id*. at *1-2 (emphases added).  The court concluded that "experts on cellulitis [would] not complicate the case to any significant extent, since the additional expert testimony only impacts the damages claimed, not Defendant's liability." *Id*. at *2.

8

In the words of the *Yong* court, "[t]here is no statute, rule, or case that prohibits a court from" reopening discovery and designating a new expert at a new trial.  432 F. Supp. 2d at 441.  And this is precisely what 20-20 is asking the Court to do.  As in *White*, the new expert testimony and limited discovery 20-20 will seek are directed to damages, and not liability (Real View already conceded liability), so it will not significantly add complexity to the case.  Moreover, like the defendants in *White* and *Young*, Real View has long been aware of 20-20's claim of damages based on the value of use, and has just completed exhaustive research and argument relating to the standard of recovery that will be before the jury in the new trial.  As a result, 20-20's claim has been fully vetted and the only issue left to decide is the true value of the use made of the 20-20 Design by Real View.  There is simply no surprise or undue prejudice.

**V.     The Cases Real View Relies Upon Are Inapposite**

Real View relies on a number of cases in its attempt to preclude additional limited fact discovery and expert testimony, but fails to mention the critical facts that make these cases inapplicable.

Specifically, in *Millenkamp v. Davisco Foods Int'l, Inc.*, 2009 U.S. Dist. LEXIS 98571, *11 (D. Id. Oct. 22, 2009), the court did not allow new expert testimony because the party failed to move to reopen discovery or extend the expert disclosure deadline at the new trial.  By contrast, 20-20 moved to reopen limited discovery and designate a new damages expert at the time it filed its election of a new jury trial.  Moreover, the proposed new expert in *Millenkamp* called for damages almost fifteen times higher than those sought in the first trial ($4.6 million v. $341,177.85).  *Id*. at *10-11.  Conversely, 20-20 is not offering new expert testimony exceeding the amount of damages sought in the first trial.

In *Bookland of Maine v. Baker, Newman & Noyes, LLC*, 271 F. Supp. 2d 324, 329 (D. Me. 2003), the court ordered a new trial because of a prejudicial comment by the plaintiff's attorney during the rebuttal argument, which resulted in "jury fail[ing] to follow the instructions on how to calculate damages." Since the new trial was aimed at correcting this prejudicial error, the court summarily denied the motion to reopen discovery, without analyzing the applicable legal standards. *Id.* at 332. Similarly, in *Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553, 557 (S.D. Miss. 2000), the court denied the request to designate a new expert because it looked at the new trial as an opportunity to cure the prejudicial and "inflammatory remarks" by the plaintiff's counsel to the jury, which twice resulted in grossly excessive damages.

*E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205 (D. Del. 1989) involved an attempt to completely re-litigate patent invalidity on remand. The court noted that the new invalidity evidence "include[d] facts and opinions which would inject a myriad of *new* issues of both substance and credibility into the case." *Id.* at 1210. *DuPont* would have been applicable if 20-20 was trying to re-litigate copyright infringement liability at a new trial. However, since both liability and injury to 20-20 have been conclusively established, this case is nothing like *DuPont.* Instead, 20-20 will seek additional limited discovery and expert testimony related solely to calculating the precise amount of damages owed to it as a result of Real View's admittedly illegal act.

Finally, in *Level 3 Commc'ns, LLC v. City of St. Louis*, 540 F.3d 794, 796 (8th Cir. 2008), the defendant sought discovery from the plaintiff Level 3 on the exact evidence Level 3 was now trying to introduce on remand. Since Level 3 chose not to address the question raised in the defendant's discovery requests, the court refused to reopen discovery on remand. Real View never sought any discovery from 20-20 on the value of use damages, and 20-20 never

10

ignored any requests for evidence related to its damages theories.  Thus, this case is also inapplicable.

**V.        Conclusion**

For the reasons discussed above, 20-20 requests that the Court reopen discovery limited to the facts surrounding Real View's illegal download of a copy of the 20-20 Design program and its use of that program and related tutorial videos in developing ProKitchen.  20-20 also respectfully requests the Court to allow new expert testimony limited to the value of use damages caused by Real View's illegal download.

Respectfully submitted,                            Dated:        October 6, 2011

                                                   20-20 TECHNOLOGIES, INC.

                                                   By its attorneys,


                                                   /s/Lawrence R. Robins
                                                   Lawrence R. Robins (BBO # 632610)
                                                   Jonathan M. Gelchinsky (BBO # 656282)
                                                   -email: larry.robins@finnegan.com
                                                   -email: jon.gelchinsky@finnegan.com
                                                   FINNEGAN, HENDERSON, FARABOW,
                                                   GARRETT & DUNNER, L.L.P.
                                                   55 Cambridge Parkway
                                                   Cambridge, MA 02142
                                                   Tel.: 617.452.1600
                                                   Fax: 617.452.1666

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 6, 2011.

/s/ Lawrence R. Robins
Lawrence R. Robins