UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REAL VIEW, LLC, <br><br>     Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> 20-20 TECHNOLOGIES, INC. <br><br>     Defendant and Counterclaim Plaintiff <br><br> BORIS ZELDIN and LEONID PERLOV, <br><br>     Additional Party Defendants in <br>    Counterclaim. | Civil Action No. 07-12157-PBS |

## REAL VIEW LLC, BORIS ZELDIN AND LEO PERLOV'S OPPOSITION TO 20-20 TECHNOLOGIES, INC.'S MOTION TO REOPEN DISCOVERY

Real View LLC, Boris Zeldin and Leo Perlov ("Real View") respectfully submit this

Reply to 20-20 Technologies, Inc.'s Motion to Reopen Discovery (ECF No. 260).[1]

## INTRODUCTION

Based on reported cases, no federal court has ever done what 20-20's motion asks this

Court to do: after remittitur and before retrial, permit the plaintiff to reopen fact and expert

discovery in order to conduct discovery into issues that the plaintiff conducted no discovery on

before trial.

This case is four years old.  It has gone through two full pretrial proceedings and a ten

day trial.  Following the trial, the Court remitted 20-20's damages from $1,370,590 to $4,200

---

[1]  Any quotation in this opposition **that is bolded and underlined** should be considered "emphasis added."

because 20-20 introduced "no basis for any damages award beyond the $4,200 that 20-20 charged its customers."  (Remittitur Order, ECF 255, p. 3).

Faced with the choice of accepting remittitur or electing a new trial on damages, 20-20 elected to retry the damages case.  Shortly after making this election 20-20 filed a motion requesting leave to reopen discovery to obtain each and every piece of missing evidence identified by the Court's Order.

The Court should deny this motion.  First, the general rule is that absent "manifest injustice" or a "compelling reason," courts do not allow a plaintiff to reopen discovery to develop new evidence to use at the retrial of a case following remittitur or remand.  The litigation process rests on the assumption that both parties present their case to their best advantage at trial the first time; it does not permit a plaintiff  to reopen discovery to assemble a entirely new body of evidence to present at a retrial.  The few exceptions, such as the discovery of new and material evidence, do not apply in this case.

Second, in the rare few cases where the federal courts have reopened discovery before a second trial, they have required the party seeking additional discovery to explain why it failed to conduct the requested discovery during the pretrial discovery period.  Only then can the courts determined whether the motion to reopen discovery fits within one of the exceptions to the general rule that prohibits reopening discovery before retrial.  20-20 has provided no explanation or justification for why it didn't conduct discovery and provide expert disclosure regarding its new damages theories during the discovery period and on the schedule required by the Court's case-management orders.

Third, as discussed below, it is evident that 20-20 made a tactical decision to pursue its case based on the theory that ProKitchen infringed 20-20 Design, and not to pursue damages for

the download alone.  The federal courts do not permit a party to reopen discovery before retrial when the failure to conduct discovery initially was the result of a strategic or tactical decision.

Fourth, when considering a motion to reopen discovery, the courts ask how extensive the new discovery will be: will the new discovery cause prejudice to the other party, and to what extent the discovery will delay the retrial?  Despite 20-20's claims to the contrary, the discovery 20-20 seeks raises myriad complex new issues that will require extensive discovery before retrial.  None of these issues were the subject of fact discovery or expert disclosures before trial, so in effect that parties will be undertaking an entirely new case.  For the reasons discussed below, if the motion is allowed Real View should be given sufficient time to conduct the discovery raised by 20-20's new claims.  Moreover, because 20-20 violated its disclosure obligations under Fed. R. Civ. P. 26(a) and (e), 20-20 should be ordered to pay Real View's attorney's fees and costs associated with discovery related to 20-20's new damages theories, pursuant to Fed. R. Civ. P. 37(d)(3).

Finally, Real View has evidence that 20-20 obtained illegal access to Real View's software in violation of Real View's license agreement.  If 20-20 is allowed to reopen discovery to explore totally new issues at trial, Real View should be permitted to conduct discovery on this issue, so  Real View can present evidence of unclean hands by 20-20.

## I.     PROCEDURAL BACKGROUND

The procedural background of this case is described in detail in Real View's Remittitur Motion (ECF No. 239, at pp. 7-9 and 12-15), and supported by an affidavit (ECF No. 240).  20-20 has not contested the facts described in the motion and affidavit.[2]  It is undisputed that 20-20

---

[2]  20-20 claims that Real View was "was well aware of 20-20's intention to assert the 'value of use' doctrine."  This assertion is based on a passing reference Real View's counsel during trial to an unnamed 7th Circuit case. (Remittitur Opp., pp. 7 and 9).  Because the name of the case was not stated, 20-20 "ventured a guess" that it was a case involving copyright value of use damages.  20-20 was incorrect.  The case (*Assessment Technologies of WI, LLC v. Wiredata*, 350 *(footnote continued on following page . . .)*

never disclosed a "value of use" damages theory in its Initial Disclosures, interrogatory responses or expert reports submitted pursuant to Rule 26(a)(3).  As Real View documented in its Remittitur Motion, the first time this damages theory appeared in this case was near the end of trial, after the close of evidence.

By agreement of the parties, fact discovery closed three years ago, on December 1, 2008. On April 13, 2009, the parties jointly moved to continue fact discovery. (ECF No. 22).  The Court promptly denied that motion. (Order, April 14, 2009).  20-20 never requested that the Court reconsider that ruling and grant it even limited discovery on any outstanding factual issue.

20-20 served its Initial Disclosures on Real View in July 2008.  (ECF No. 136-8).  20-20 responded to Real View's interrogatories, asking it to "describe in detail" its damages, in October 2008.  (ECF No. 136-4).

The Court issued two case-management orders requiring the parties to prepare expert reports.  The first, a Pretrial Order dated April 14, 2009 (ECF No. 23), required 20-20 to provide expert reports by May 5, 2009.  The second Pretrial Order, dated February 11, 2010 (ECF No. 85), required 20-20 to provide expert reports by March 15, 2010.  20-20 served Real View with two expert damages reports in response to these orders, and a third, supplemental expert damages report.  (ECF Nos. 148-1, 148-2, 240-5).

---

F.3d 640 (7th Cir. 2003)) had nothing to do with value of use damages.  20-20 has also asserted that it cited "a preeminent value of use copyright case" in its Trial Brief.  (Remittitur Opp., p. 8, citing ECF No. 154).  The case 20-20 cited is *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2nd Cir. 2001).  However, this case addressed a number of issues in copyright law, and 20-20 cited it for copyright principles *other than* "value of use."

The fact that 20-20's argument is premised on an unnamed case mentioned in passing at sidebar during trial, forcing 20-20 to "guess" (wrongly) about the case, and that 20-20 has misrepresented its citation of *On Davis* to the Court, underscores the weakness of its position.

The Court conducted five pretrial conferences (4/14 2009, 7/13 2009, 6/10 2010, 9/28 2010 and 1/5 2011).  The parties filed two Joint Pretrial Memos, and filed numerous additional motions and responses, many of which involved damages issues in this case.

Nowhere, in this massive record  - in the Initial Disclosures, interrogatory response, expert reports, joint pretrial memos or during the pretrial conferences -- did 20-20 disclose that it was seeking damages based on the "value of the use" of the download.

## II.    THE COURT'S REMITTITUR ORDER AND 20-20'S MOTION TO REOPEN DISCOVERY

The Court's Remittitur Order (ECF No. 255, dated September 21, 2011), remitted damages from $1,370,590 to $4,200.  The 17 page Memorandum and Order reviews the evidence in detail, and  concludes that "the jury was presented with almost no evidence" regarding a hypothetical license fee besides the $4,200 license fee . . .."  (Order, p. 8).  20-20's motion to reopen discovery tracks the Court's Remittitur Order; it is an obvious attempt to "plug the holes" identified in Order.

The Remittitur Order cites cases holding that a party should introduce expert testimony to determine a hypothetical license fee.  (Order, p. 7).  20-20 never designated an expert on this issue; however, its motion to reopen discovery seeks permission to designate a new expert to testify the fair market value of a license. (20-20 Motion, p. 1).  The Order states that "20-20 failed to introduce sufficient evidence of Real View's saved development costs." (Order, p. 11).  20-20 never conducted discovery into saved costs during discovery, and it didn't disclose this damages theory in its Initial Disclosures, interrogatory answers or expert reports.  However, 20-20 seeks to reopen discovery into the "cost and circumstances surrounding the development of ProKitchen . . . the number of employees and the time it took to develop ProKitchen."  (20-20 Mem., p. 2).

On the issue of price erosion damages, the Court stated that 20-20's damages expert, Creighton Hoffman, "did not testify that any of this price erosion was the result of the illegal download . . . [20-20 provided no evidence] to establish a causal link [between the download and these damages]." (Order, pp. 13-14).  The Court commented on the lack of "any evidence from 20-20 tying the download to the price erosion damages." (Order, p. 15).  During the discovery period in this case 20-20 failed to disclose expert testimony on causation between the download and 20-20's price erosion damages.  However, its motion asks that discovery be reopened to permit "preparation of expert reports on . . . the causal link between the download and 20-20's price erosion damages." (20-20 Motion, p. 1).

The Court also noted that the evidence at trial showed that Real View's "primary sources of information" on 20-20 Design were ten video tutorials, and that "20-20 never proved [that Real View's use of these videos] constituted a separate act of infringement." (Order, p. 14).  The Court stated, "given Real View's access to these videos . . . the connection between the illegal download and Real View's market success is unclear."  20-20 was aware of Real View's use of these videos as far back as June 2009.  (ECF No. 31, p. 4).  It could have asked the Court to allow it to conduct limited fact discovery into this issue at any time before trial began in January 2011.  It failed to do so.  The reason, as discussed below, is that "value of use" damages were far from the minds of 20-20's lawyers.  Their case was focused on proving that ProKitchen infringed multiple versions of 20-20 Design.  Since Real View had admitted to downloaded 20-20 Design v. 6.1 (conceding access), the video tutorials were irrelevant.

Now that the Court has pointed out that the video tutorials are relevant to the issue of causation, 20-20's motion seeks discovery into "the circumstances surrounding the access and use of the 20-20 Design tutorial videos . . .." (20-20 Motion, p. 2).

As discussed below, 20-20's motion is far too late.  The discovery it seeks before retrial should have been conducted during the discovery period in this case and in compliance with the Court's case-management orders.

## III.   20-20 HAS FAILED TO SATISFY THE LEGAL STANDARDS FOR REOPENING DISCOVERY

### A.   20-20 Has Failed to Satisfy the Legal Standard Necessary to Reopen Discovery Following Remittitur and Before Retrial

The only case Real View has found in which a party moved to reopen discovery following remittitur and before retrial is *Bookland of Maine v. Baker, Newman & Noyes*, LLC, 271 F. Supp. 2d 324 (D. Me. 2003).  In *Bookland* the court denied the motion to reopen discovery, stating: "This case was fully prepared, and proceeded to a full trial on the merits. It is too late for the lawyers to determine, now that they have seen what happened at the first trial, that they would like some more information before they conduct the second (partial) trial on damages."  *Id.* at 332.

Reported cases deciding a motion to reopen discovery arise following remand from the circuit courts are also scarce.  However, the general rule is that "remand for a new trial [is] not an invitation to reopen discovery for newly retained expert witnesses and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony."  *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449 (10th Cir. 1993).[3]  The legal standard most often applied is that the party moving to reopen discovery following remand must show that denial of the motion would be a "**manifest injustice**."  *Cleveland, supra*, at 1450.  *See also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 775 (5th Cir. 1999)

---

[3]  See also *Yong v. Nemours Found.*, 2006 U.S. Dist. LEXIS 77095 (D. Del. Oct. 23, 2006) ("absent some **compelling reason**, a retrial should not involve the addition of new issues, evidence, or witnesses").

(Fifth Circuit applied a "manifest injustice" standard in affirming the district court's denial of a motion to reopen discovery following remand).[4]

The exceptions to the general rule are limited, and do not apply in this case.  *See Cleveland, supra* at 1450 (**new and material evidence** that was not otherwise readily accessible or known);  *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1033 (9th Cir. 2004) (remanding for further discovery directed at **new legal standard** that took effect while the case was on appeal); *Yong*, *supra*  (plaintiff permitted to replace expert from first trial with new expert who would **address the same issue as the expert to be replaced**).

20-20's motion does not address the "manifest injustice" standard, and it is clear that allowance of the motion is not necessary to avoid a manifest injustice.  20-20 made the decision to pursue a trial strategy that argued that Real View's software was infringing, not a strategy that would allow it to recover damages based on the value of use of the download.  20-20 it waited until after the close of evidence on Day Nine of trial to introduce this concept for the first time. Now, 20-20's argument does not acknowledge the "manifest injustice" standard, but rather argues that reopening discovery is consistent with "substantial justice." (20-20 Mem., p. 5).

---

[4]  *See also Clark v. R.E.L. Products, Inc.*, 1993 U.S. Dist. LEXIS 4788 (D. Kan. 1993) (same); *Whitehead v. K Mart Corp.*, 173 F. Supp. 2d 553 (S.D. Miss. 2000) (same); *LNC Invs., Inc. v. First Fid. Bank*, 2000 U.S. Dist. LEXIS 10936 (S.D. N.Y. 2000) ("It would not be fair to require Defendants to reopen discovery on [a previously unasserted claim] . . . and prepare to defend against it at the second trial. The claim will therefore be precluded"); *E. I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205, 1210 (D. Del. 1989) (defendant's proposed new evidence "would inject a myriad of new issues of both substance and credibility into the case, which [plaintiff] would be entitled to address.  . . . The Court assumes **[plaintiff] would be required to address each of these issues with discovery, preparation and marshalling experts of its own**.  Calling on its experience in these matters, the Court concludes that allowing the additional evidence **would place a great burden on DuPont and its witnesses, after having once tried the case**"); *Pittsburgh Terminal Corp. v. Baltimore & O. R. Co.*, 586 F. Supp. 1297, 1300  (W.D. Pa. 1984) (denying motion to reopen discovery following remand – "**the issue of damages has already been fully tried**").

This Court should respond to 20-20's request for "substantial justice" the same way a Massachusetts district court judge responded to a motion to reopen discovery based on "substantial justice" 30 years ago: "substantial justice is equally well served by counsel's timely and diligent attention to the development of a case . . . the information sought should have been the subject of plaintiff's discovery efforts from the outset. **Absent compelling circumstances**, and there are none here, a motion to reopen discovery filed well over a year and a half after the close of discovery should be, and will be, denied." *Samuel Black Co. v. Burroughs Corp.*, 1981 U.S. Dist. LEXIS 16289 (D. Mass. Dec. 18, 1981). The same observation applies in this case; the discovery 20-20 seeks "should have been the subject [20-20's] discovery efforts from the outset." 20-20 has presented no compelling circumstances to justify reopening discovery three years after it closed.[5]

Denial of 20-20's motion would not result in a manifest injustice, and 20-20 has failed to present compelling circumstances that would justify its allowance. For these reasons, the motion should be denied.

---

[5] The cases cited by 20-20 in support of its motion do not support its position. In *Total Containment, Inc. v. Dayco Products, Inc.*, 177 F. Supp. 2d 332, 339 (E. D. Pa. 2001), the court admitted limited evidence to permit the plaintiff to "expand upon evidence which it had previously introduced," where "the potential prejudice on [defendant] is minimal [and discovery on] this limited issue should be relatively short." However, the court *excluded* "new theories and evidence" that had not been mentioned in the complaint or pretrial memorandum. *Id*. at 336, 341. The court held that a party could not "proffer new theories after **making a tactical decision not to do so at the prior trial**." *Id*. at 339. In this case, 20-20 did *not* proffer the damages theories it now seek to reopen evidence to obtain. 20-20 claims that *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 891 (3d Cir. 1975), is "closely on point." (20-20 Mem., p. 4). However, the issue in that case was not reopening discovery, but rather the scope of evidence admissible on retrial. There is no indication that the "missing evidence" had not been the subject of discovery. 20-20 cites *García-Pérez v. Hospital Metropolitano*, 597 F. 3d 6 (1st Cir. 2010) and *Benitez-Garcia v. Gonzalez-Vega*, 468 F. 3d 1 (1st Cir. 2006). However, neither of these cases have anything to do with a motion to reopen discovery.

**B.      20-20 Has Failed to Show "Substantial Justification" for Reopening Discovery Under the Discovery Rules and the Court's Case-Management Orders**

As indicated above, the federal rules do not contain an explicit rule addressing when a party is entitled to reopen discovery before the retrial of a case.  However, there is a large body of law that requires a party to comply with the discovery rules and case-management orders.  20-20 does not mention these rules, or the cases applying them.  However, it is clear that 20-20's motion should be denied based on its failure to comply with the discovery rules.

The fact that a case is in a posture for retrial does not excuse a party from its disclosure obligations under Fed. R. Civ. P. 26(a).  *See Millenkamp v. Davisco*, 2009 U.S. Dist. LEXIS 98571 (D. Id. 2009) ("there is no reason why plaintiff could not have retained an expert on damages prior to the first trial.  [The new expert's] report and testimony are new evidence and material that plaintiffs seek to admit at the second trial that are outside of the discovery and expert disclosure deadlines"); *Dekalb Genetics Corp. v. Pioneer Hi-Bred Int'l*, 2001 U.S. Dist. LEXIS 10985 (N.D. Ill. July 31, 2001) (discovery closed, motion to reopen discovery before retrial denied).

Rule 26(a)(1)(A)(iii) required 20-20 to provide a computation of damages in its Initial Disclosures,  and Real View's damages interrogatory required 20-20 to "describe in detail" its damages.  Rule 26(e) imposes a duty to supplement a Rule 26(a) Initial Disclosure or a response to an interrogatory "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  20-20 failed to identify its value of use damages theories in its Rule 26(a) Initial Disclosures or its interrogatory responses, and it failed to supplement its disclosures or responses.[6]

---

[6]   20-20's Initial Discloses stated that it was seeking damages for "lost profits and/or Real View's profits attributable to its infringement ..."     (ECF No. 136-8).  Real View's interrogatory asked 20-20 to "Identify, itemize, and describe in detail all damages, expenses and losses you are claiming in this litigation . . .."  20-20 responded that this information "was in the *(footnote continued on following page . . .)*

20-20 also was required to comply with the Court's case-management orders and provide a written report disclosing to Real View "a complete statement of all opinions" its expert witnesses would provide, and "the basis and reasons for them." (Rule 26(a)(2)). The latest date it could do this (under the *second* Pretrial Order) was March 15, 2010. (ECF No. 85). However, the Court permitted 20-20 to file a supplemental report -- a third report -- on October 12, 2010. (ECF No. 148-2). 20-20's three expert damages reports failed to disclose that 20-20 was seeking damages for the download based on value of use, or that there was a "causal link" between the download and 20-20's price erosion damages. (*See* ECF Nos. 148-1, 148-2, 240-5).

Rule 37(c)(1) enforces the disclosures required under Rule 26(a*)* and the duty to supplement prior answers to interrogatories under Rule 26(e*)*. *See, e.g., Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo*, 248 F.3d 29, 33 (1st Cir. 2001) (Rule 37(c)(2) sanction "is a self-executing sanction for failure to make a disclosure required by Rule 26(a)"). A party who breaches the duty to disclose a computation of damages under Rule 26(a)(1)(A)(iii) and/or the duty to supplement an interrogatory answer "may not use any undisclosed material as evidence unless it proves that its failure to disclose was harmless or substantially justified." *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("the party facing sanctions for belated disclosure" has the obligation "to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction").[7]

20-20's failure to supplement its Initial Disclosures or its interrogatory responses, and its disregard of the Court's case-management orders regarding Rule 26(a)(2) expert reports, is

possession of Real View," and that 20-20 would "supplement this response ..." (ECF No. 136-4, p. 21-22). 20-20 never supplemented its Initial Disclosures or its interrogatory responses.

[7]   *See also Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) ("litigants have an **'unflagging duty to comply with clearly communicated case-management orders'**").

clearly not "harmless."  *See Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188 (1st Cir. 2006)

(discussing harmlessness "as a fairly limited concept" such as "late disclosures of a potential

witness known to all parties [or] a trial witness already listed by the adverse party, or a witness").

As discussed below, 20-20's proposed discovery injects significant new, complex issues into the

case.  Conducting discovery into these issues, and preparing for a second trial on them, will

require Real View to incur significant costs.  20-20's violation of the discovery rules will also

impact the Court's docket, deferring the retrial of this case while the parties engage in this new

discovery, prepare new expert reports, and prepare for a trial on issues that, heretofore, have not

been part of this case.  *See Gagnon*, *supra,* 437 F.3d at 197-198  (exclusion of evidence for

failure to comply with Rule 26(a) and (e) includes an "assessment of what the late disclosure

portends for the court's docket"); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.

1967) ("A busy district court need not allow itself to be imposed upon by the presentation of

theories seriatim").

20-20's motion to reopen discovery should be denied based on 20-20's failure to comply

with the discovery rules and the Court's case-management orders.

### C.  20-20 Has Failed to Provide Any Explanation For Its Failure to Conduct the Discovery Necessary to Prove "Value of Use" Damages Before Trial

When a party moves to reopen discovery -- whether before the first trial or before a retrial

-- a critical factor is its explanation for why the discovery wasn't conducted during the discovery

period set by the court.  *See, e.g., Macaulay v. Anas*, 321 F.3d 45, 52 (1st Cir. 2003) (district

court's preclusion of late-disclosed expert evidence appropriate where, among other things, "the

**appellant [had not] advanced any real justification for [the] tardy emergence [of the**

**expert's report**]"); *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001)

("The appellant's response to the motion to strike [the proposed new expert's] affidavit was

completely **bereft of any explanation** for neglecting to identify the expert before the close of

discovery, and prejudice is apparent"); *Martin's Herend Imports, supra,* 195 F.3d at 775 (motion to introduce new evidence properly denied where **plaintiff did not offer "any explanation of why it did not offer it at the first trial"**).[8]

20-20's motion is "bereft of any explanation" as to why it failed to follow the discovery rules why it disregarded the Court's Pretrial Orders, and why it failed to introduce evidence supporting value of use damages at trial.

The Court can, however, infer the explanation.  It is common knowledge that copyright cases seeking damages based on a hypothetical license fee tend to result in modest awards.  *See, e.g.*, *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F. 3d 700, 709 (9th Cir. 2004) (hypothetical license fee damages of **$37,500**); *Bruce v. Weekly World News, Inc.*, 310 F. 3d 25 (1st Cir. 2002) (damages of **$25,642**); *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2nd Cir. 2001) (damages of  **$50**); *Steven Greenberg Photography v. Matt Garrett's of Brockton, Inc.*, 816 F. Supp. 46, 47 (D. Mass. 1992) (damages of **$2,667**).

Rather than risk a small award based on a hypothetical license fee theory, 20-20 took the most aggressive approach possible, hoping to persuade the jury that Real View's software infringed multiple versions of 20-20 Design.  If it succeeded, it could ask the jury to award price erosion/illegal profit damages claims which, by the time of trial, 20-20 claimed totaled almost $2 million.  A case focused on a hypothetical license fee for the download alone ran the risk of a lower judgment, would have complicated 20-20's case, and would have utilized limited trial

---

[8]  *See also Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291 (S.D.N.Y. 2001) (in deciding whether to exclude evidence proposed after the end of discovery courts should consider "**the party's explanation for the failure to comply** with the discovery order"); *Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*, 2006 U.S. Dist. LEXIS 14360 (D. Mass. Mar. 29, 2006) (plaintiff "**has not presented any justification** for its failure to follow the procedural rules").

time.  And, a judgment based on the value of use of the download would not have resulted in an injunction, which was of paramount importance to 20-20.

This was a tactical decision by 20-20.  It explains why 20-20 didn't disclose value of use damages during discovery, and why it didn't present a value of use case at trial.  However, that decision precludes 20-20 from going back and conducting the discovery it should have done before trial.

The courts are vigilant to prevent litigants from doing exactly what 20-20 is trying to do with its motion to reopen discovery.  Litigants do not get a new round of discovery after a first trial when the failure to conduct that discovery initially was due to a strategic or tactical decision. "It is always **easy in hindsight** for counsel to realize there may be **a better way to try a case the second time around**." *Cleveland, supra*, 985 F.2d at 1449.    *See, e.g., Gagnon, supra*, 437 F.3d  at 197 ("**miscalculated strategy**" does not constitute "substantial justification" for late expert report); *Habecker v. Clark Equipment Co.*, 36 F.3d 278, 288-289 (3d Cir. 1994) (plaintiff may not pursue new claim on retrial after **it made the litigation choice** not to pursue it at the original trial).[9]

---

[9] *See also La Gorce Palace Condo. Assoc. v. QBE Ins. Corp.*, 2011 U.S. Dist. LEXIS 44746 (S.D. Fla. Feb. 25, 2011) (failure to submit timely expert disclosures based on "**strategic choice**" or "just poor planning" is not "not excusable neglect, substantial justification or good cause"); *Mann v. Fernandez*, 615 F. Supp. 2d 1277  (D. N.M. 2009) (new expert may not be designated where failure to designate an expert was "**a deliberate tactical decision**"); *Steadfast Ins. Co. v. Auto Marketing Network, Inc.*, 2003 U.S. Dist. LEXIS 22217 (N. D. Ill. December 8, 2003) (even if exclusion of new expert on retrial amounted to  "manifest injustice . . . it would be as a result of **[plaintiff's] own strategies and decisions**, and no good reason exists for this court to disturb those decisions"); *Total Containment, Inc. v. Dayco Products, Inc.*, 177 F. Supp. 2d 332 (E. D. Pa. 2001) ("[plaintiff] now seeks to proffer **new theories after making a tactical decision not to do so at the prior trial**."  . . . The wisdom of [plaintiff's] tactical decision is best left to [plaintiff], but a plaintiff omits evidence necessary to sustain its damage award at its peril").

20-20 made a litigation choice to seek damages based on its theory that ProKitchen infringed 20-20 Design.  After basing based its discovery and trial strategies on that approach, 20-20 should not be allowed to reopen discovery to pursue an alternative strategy.  Accordingly, its motion should be denied.

## IV.   20-20 HAS UNDERSTATED THE DISCOVERY NECESSARY ON ITS NEW DAMAGES THEORIES, AND IGNORED THE HARM TO REAL VIEW.

Unfortunately, 20-20's brief makes a number of assertions that are false or misleading. 20-20 states that  "Real View has long been aware of 20-20's claim of damages on the value of use. . . . As a result, 20-20's claim has been fully vetted . . .."  (20-20 Mem., p. 9).  This is simply untrue -- 20-20 has pointed to nothing in the record to indicate that Real View learned of 20-20's value of use damages theory before the close of evidence on Day Nine of trial.  20-20's position on this issue is so weak that it has been forced to "guess" -- wrongly -- about the name of a case counsel for Real View mentioned in passing at sidebar during trial, and cite to a single case in a 20-20 filing which relates to the law of value of use, but which 20-20 cited for a different legal principle.  (*See* Note 2, *supra*).

20-20 states that "Real View never sought any discovery from 20-20 on the value of use damages, and 20-20 never ignored any requests for evidence related to its damages theories." (20-20 Mem., pp. 10-110).  Again, this is disingenuous; Real View never sought discovery on value of use damages since 20-20 never disclosed that it was seeking damages on that theory. And, as noted above, 20-20 did ignore its obligation to supplement its Initial Disclosure and interrogatory responses relating to these new damages theories.

20-20 states that Real View "never raised a Rule 26(a) objection during trial, thereby waiving its right to complain about inadequate disclosure."  (20-20 Mem., p. 7, n. 2).  However, 20-20 ignores the fact that Real View filed a detailed opposition to 20-20's Proposed Additional Jury Instructions, objecting to 20-20's new download instruction.  (ECF No. 204).  Moreover,

this argument may have been relevant to 20-20's opposition to Real View's motion for remittitur (where 20-20 raised it), but it is not relevant to its motion to reopen evidence before retrial after remittitur has been ordered.

20-20 states that reopening discovery will not result in prejudice to Real View because Real View stated, before trial, that "subject to 20-20 providing a dollar amount reflective of its actual licensing fees, there will be no issue with respect to damages."  (20-20 Mem., p. 7, quoting ECF No. 110, p. 8).  However, 20-20 fails to disclose that Real View goes on to state that the actual licensing fees were "$4,195 based on the damages report filed by 20-20's expert, Creighton Hoffman."  It also fails to disclose that 20-20 rejected this offer.  (ECF No. 130, p. 8).

Now, 20-20 states that the discovery it seeks will require "Real View to produce a relatively small number of documents . . ." and will "not add complexity to the case or make the case significantly more expensive"  (20-20 Mem., p. 2).

20-20 appears to forget that discovery is a two-way process, and that Real View is entitled to discovery on 20-20's new claims.  As the court observed in *E. I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205, 1210 (D. Del. 1989), defendant's proposed new evidence "would inject a myriad of new issues of both substance and credibility into the case, which [plaintiff] would be entitled to address.  . . . The Court assumes **[plaintiff] would be required to address each of these issues with discovery, preparation and marshalling experts of its own**.  Calling on its experience in these matters, the Court concludes that allowing the additional evidence would **place a great burden on DuPont and its witnesses, after having once tried the case**." *See also Dekalb Genetics Corp. v. Pioneer Hi-Bred Int'l*, 2001 U.S. Dist. LEXIS 10985 (N.D. Ill. July 31, 2001) (denying motion to reopen discovery before retrial: "if Pioneer were allowed to do as it wants, **substantial factual discovery would have to take place on both sides**. This court would then have to **reopen the expert discovery to allow the experts**

16

**to modify their 26(a)(2) reports to address the new evidence**. The delay would be substantial").

These observations apply here as well.  Real View will be required to address 20-20's new damages claims with "discovery, preparation and marshalling of experts of its own."  From what Real View can tell from 20-20's motion at this time,  Real View's discovery is likely to include (at the very least) the following:

- Discovery to determine the extent to which 20-20 made the interface of version 6.1 available without cost and/or without contractual restrictions, including trial versions, trade show displays, marketing materials, videos (including video tutorials) and all other presentation materials.

- Discovery to obtain copies of 20-20 video tutorials, all documentation (such as the detailed documentation 20-20 posted for free on the Internet (Trial Ex. 209), and agreements relating to the video tutorials.

- Discovery to obtain materials relating to training programs held by 20-20 for version 6.1.  Real View believes the evidence will show that anyone could obtain access to the user interface of 20-20 Design for a low program fee.

- Discovery to obtain all materials relating to training programs held by 20-20's partners and 20-20 resellers.

- Discovery to obtain documents that relate to the development of 20-20 Design from 1983 to 2002, to show that the "millions and millions" in development costs related to source code development, not the user interface.

- Discovery to obtain licenses by 20-20 that might establish "benchmark licenses" for the hypothetical license 20-20 seeks to recover from Real View.

Real View will be required to retain an expert on software licensing to review 20-20's licensing practices and research benchmark licenses, and an expert on software development to analyze both Real View's and 20-20's development costs. The experts will have to prepare reports, be deposed and testify on these issues.

Prejudice to the non-moving party is a factor in evaluating a motion to reopen discovery. *See, e.g.*, *Habecker v. Clark Equip. Co.*, 797 F. Supp. 381, 383 (M.D. Pa. 1992) (on remand from 3rd Circuit: "plaintiffs propose that the court permit plaintiffs to reopen discovery in numerous areas for an additional 90-120 day period. . . . The court is not willing at this late date **to [put]**

17

**defendants . . . to significant expense** and effort essentially because **plaintiffs were not particularly thorough in building their case originally**"); *E. I. DuPont de Nemours*, *supra*, 711 F.Supp. at 1210 ("calling on its experience in these matters, the Court concludes that allowing **the additional evidence would place a great burden on DuPont and its witnesses**, after having once tried the case").

This discovery, and a retrial on these new issues, will cost Real View hundreds of thousands of dollars, resulting in serious prejudice Real View. 20-20's public reports show that at the end of 2010 it had cash and cash equivalents of more than $14.6 million.[10] Given this war chest, 20-20 can afford this expense to force its largest U.S. competitor out of business through legal expenses.

For these reasons, 20-20's motion should be denied. However, in the event it is allowed, 20-20 should be required to pay Real View's attorneys fees and costs associated with this new discovery, pursuant to Fed. R. Civ. P. 37(c)(1)(A) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the court, on motion, and after giving an opportunity to be heard, . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure").

**V.   20-20 SHOULD BE ORDERED TO PROFFER ITS NEW DAMAGES THEORIES, EVIDENCE AND EXPERT TESTIMONY BEFORE ANY DISCOVERY COMMENCES**

For all of the reasons described above, 20-20's motion to reopen discovery should be denied. However, if the Court allows the motion it should first require 20-20 to proffer a detailed explanation of its damages theories and its expected evidence, including expert testimony. 20-20 should not be allowed to put Real View to the expense of pursuing damages

---

[10] http://www.20-20technologies.com/annualreport/2010/

theories that have no basis in law.  *See, e.g., Roberts v. Ground Handling, Inc.*, 2007 WL

2753862 (S.D. N.Y. 2007) (futility of the damages theory is a factor to consider before allowing

plaintiff to advance new damages theory).

　　20-20's new damages theories are unlikely to withstand legal scrutiny.  Only one

copyright case has awarded "saved costs" as a measure of damages.  *See Harris Market*

*Research v. Marshall Marketing and Communications*, 948 F.2d 1518, 1524 (10th Cir. 1991).

However, that case reflects a narrow exception that does not apply here.  In *Harris* the plaintiff

had developed a custom software program for the plaintiff, and the jury instruction allowed the

jury to award "unrecovered costs."  *Id*. at 1523.  *See Softel, Inc. v. Dragon Medical and Scientific*

*Communications LTD*., 891 F. Supp. 935, 941 (S.D.N.Y. 1995) (distinguishing *Harris* based on

"unrecovered costs").[11]

　　This case does not involve a custom software program developed by 20-20 for Real

View, and it does not involve "unrecovered costs."  There is no basis on which 20-20 can

recover Real View's "saved costs" associated with the download.

　　20-20 faces the same problem with its claim for a hypothetical license fee.  Most courts

will not permit a hypothetical license fee award absent proof that the plaintiff would have

licensed the infringed work to the defendant or a third party for the specific use at issue.[12]  20-20

---

[11] *See also Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 752 (E.D. MI. 1998) (citing *Softel:* "the expenses incurred by a plaintiff in developing the work which has been infringed are not recoverable . . . unless they qualify as "unrecovered costs"); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.,* 329 F. 3d 923, 923 (7th Cir. 2003) (Posner, J.) ("cost savings . . . not the fruit of conduct for which copyright law is intended to provide a remedy").

[12] *See, e.g., Chase Jarvis v. K2 Inc.*, 486 F.3d 526, 528, 533 (9th Cir. 2007) (license fee appropriate "in situations where the **infringer could have bargained with the copyright owner to purchase the right to use the work**"; plaintiff had licensed to defendant in the past); *On Davis,* 246 F.3d at 161-62 (**parties were not competitors** and the plaintiff had obtained a $50 royalty for use of its sunglasses in a different magazine feature); *Oracle USA, Inc. v. SAP, AG,* 2011 U.S. Dist. LEXIS 98816  (D. N. Cal., September 1, 2011) ("cases in which the court has *(footnote continued on following page . . .)*

made clear at trial that it would not have licensed 20-20 Design to Real View.  (Trial Tr. Day five, p. 77).  For this reason, 20-20 is not entitled to damages based on a hypothetical license fee.

To add to this, 20-20 asserts that the measure of damages for a hypothetical license should be based on an "unrestricted" license."  (20-20 Mem., p. 2).  However, the correct application of this damages measure determines value of use damages based on the infringer's *actual use*."[13]  Here, Real View did not reproduce or resell the copyrighted work, as an "unrestricted license" would have allowed it to do.  20-20 also claims that the value of use is based on "the . . . use of 20-20 Design to build a competing business."  (20-20 Mem., p. 2).  This new "spin" on copyright damages is not supported by law.

Third, 20-20's newest damages theory, that there is a "causal link between the illegal download and 20-20's price erosion damages" ( 20-20 Mot., p. 1), is a futile attempt to breath life back into Creighton Hoffman's discredited "price erosion" testimony.  The idea that 20-20 can recover price erosion damages based on a "causal link" between the download and non-infringing product simply has no basis in copyright law.  *See Liu v. Price Waterhouse LLP*, 2000 U.S. Dist. LEXIS 16762 (N.D. Ill. Oct. 27, 2000) ("that defendants may have viewed or studied plaintiff's program is irrelevant if defendants' resulting work is not substantially similar to plaintiff's . . .").

## CONCLUSION

For the foregoing reasons,  20-20's motion to reopen discovery should be denied.

---

affirmed a hypothetical license **have involved non-competitors**"); *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 458 F. Supp. 2d 252 (E.D. Pa. 2006) (plaintiffs could not recover hypothetical license damages **because evidence established that "there could not have been such a contract"**).

[13] *See Oracle, supra* ("the amount of the hypothetical license must be **based on the actual use** the defendant made of the work . . ..").

Respectfully submitted,

REAL VIEW LLC, BORIS ZELDIN
AND LEONID PERLOV

By their attorneys,

/s/ Lee T. Gesmer
Lee T. Gesmer, BBO #190260
Joseph J. Laferrera, BBO #564572
Nancy M. Cremins, BBO #658932
Crystal L. Lyons, BBO # 677931
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Telephone:  (617) 350-6800
Facsimile:  (617) 350-6878
email: lee.gesmer@gesmer.com

Dated:  October 27, 2011

## Certificate of Service

I hereby certify that on October 27, 2011, I electronically filed the instant document with the Clerk for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lee T. Gesmer
Lee T. Gesmer

762435.9