**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REAL VIEW, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>20-20 TECHNOLOGIES, INC.,<br><br>      Defendant. | CIVIL ACTION NO. 07-12157 |
| 20-20 TECHNOLOGIES, INC.,<br><br>      Counterclaim-Plaintiff,<br><br>v.<br><br>REAL VIEW, LLC,<br><br>      Counterclaim-Defendant, and<br><br>BORIS ZELDIN and LEONID PERLOV,<br><br>      Additional Party Defendants<br>      in Counterclaim. | **LEAVE TO FILE GRANTED ON:**<br>**NOVEMBER 7, 2011** |

**20-20 TECHNOLOGIES, INC.'S REPLY MEMORANDUM**
**IN SUPPORT OF A MOTION TO REOPEN LIMITED DISCOVERY**

20-20 Technologies, Inc. ("20-20") respectfully submits this memorandum in support of its Motion to Reopen Limited Discovery pursuant to the Court's November 7, 2011 Order granting 20-20's Motion for Leave to File a Reply (Dkt. 265, Oct. 31, 2011).

**I.  SUMMARY OF ARGUMENT**

Unquestionably, the outcome of this motion is likely to have a significant impact on 20-20's ability to demonstrate to the court and jury that it suffered significant economic injury as a result of Real View's illegal download of 20-20 Design and its use of the illegal copy to design ProKitchen. The jury found 20-20's injury to be in excess of $1.3 million, and while this Court did not find sufficient evidence of record to support the verdict, it did find that the value of an

1

unlimited license to use 20-20 Design would be worth "considerably more'" than $4,200. (Memorandum and Order at p. 16, Dkt. 255, Sept. 21, 2011.)

Before the Court is the issue of whether or not the interests of fairness and substantial justice warrant reopening limited discovery and permitting 20-20 to appoint a new expert witness on the value of use damages. Real View claims that, rather than a "fairness and substantial justice" standard, it is actually a "manifest injustice" standard that is controlling. But the cases Real View cites in support of its argument fall well short of establishing a "manifest injustice" standard. In any case, and as described below, denying 20-20's motion would in fact result in "manifest injustice" under the standard Real View proposes.

Real View's Rule 26(a) and 37(c) preclusion argument is equally unavailing. Although Real View attempts to again resurrect its Rule 26(a) argument, 20-20 has amply shown that Real View waived the preclusion argument by failing to object at trial on the ground that it was unaware of Real View's damages theories. In any case, the Court is not bound by the pretrial order from the first trial and can, in its discretion, allow new evidence and witnesses at a new trial, and set a new scheduling order in accordance with its decision.

Real View's unusual argument that 20-20 should be required to pay Real View's attorney's fees and costs for any additional discovery it will take has no basis in the law. Virtually all the discovery that Real View indicates it will seek relates to Real View's theory that it should not compensate 20-20 for the value of the stolen 20-20 Design program if 20-20 showed the interface of the program during trade shows. Under well-established law, just because the program may have been available through legal means does not justify Real View's decision to steal it.

Finally, the Court should also reject Real View's speculations that 20-20's requested discovery may turn out to be expansive and costly. The requested discovery will require Real View to produce a relatively narrow set of documents, which, given Real View's size, are most likely in Messrs. Zeldin and Perlov's immediate possession. 20-20 will shoulder most of the expenses associated with the two depositions of Real View's owners and the new expert report addressing the calculation of the hypothetical license fee. If and when any concrete issues related to the scope or cost of the limited discovery arise, Real View will have an opportunity to object and, if needed, seek relief from the Court.

## II. UNDER THE CONTROLLING STANDARD, THE COURT SHOULD REOPEN LIMITED DISCOVERY TO PREVENT A WINDFALL TO THE ADMITTED INFRINGER REAL VIEW

### A. The Interests of Fairness and Substantial Justice Is the Governing Standard Which, in the Court's Broad Discretion, Compels Reopening Limited Discovery

Real View asserts that the applicable legal standard on a motion to reopen discovery following remand requires the moving party to demonstrate "manifest injustice." (Real View Opposition at p. 7, Dkt. 264, Oct. 27, 2011.) Real View is incorrect. In any event, the circumstances of this case warrant reopening limited discovery to accurately calculate the damages owed to 20-20 for Real View's admitted theft of the 20-20 Design. Even though this is not the applicable standard, not allowing this additional limited new evidence would indeed result in "manifest injustice." *Martin Herend's Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 195 F.3d 765, 775 (5th Cir. 1999).

#### *1. 20-20 Articulated and Applied the Correct Legal Standard from the Beginning*

The controlling legal standard for reopening discovery holds that the district court, in its broad discretion, may allow additional evidence and expert witness testimony at a new trial if

3

considerations of fairness and substantial justice so warrant. *Total Containment, Inc. v. Dayco Prods., Inc.*, 177 F. Supp. 2d 332, 339 (E.D. Pa. 2001); *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894-95 (3d Cir. 1975). 20-20 applied cases where the courts, in situations analogous to this case, allowed additional evidence and expert testimony at a new trial. (20-20's Memorandum in Support of a Motion to Reopen Discovery at pp. 3-8, Dkt. 261, Oct. 6, 2011.)[1]

Under the controlling standard, additional limited discovery and expert testimony as to the calculation of the value of use damages should be allowed because (i) Real View concedes that it is liable for the illegal download, (ii) the fact of injury to 20-20 has been established; (iii) this Court has acknowledged that an unlimited license to use 20-20 Design would be valued substantially higher than 20-20's standard $4,200 licensing fee; and (iv) there is no surprise or prejudice to Real View, a litigant that never objected to the Value of Use Jury Instruction 28 on grounds that it was not aware of 20-20's damages theories. Indeed, in *Rochez*, a case that is closely on point,[2] the Third Circuit allowed the plaintiff to introduce new evidence related to calculating damages because "injury ha[d] plainly been shown and liability ha[d] been conclusively established." 527 F.2d at 895.

Real View's claim that 20-20 ignored "a legal standard central to its motion" is baseless. Real View wants this Court to believe that "manifest injustice" is the central and dispositive inquiry in deciding whether to allow additional discovery at a new trial. (Real View Opposition

---

[1] Real View's statement that "no federal court has ever done what 20-20's motion asks this Court to do" (Real View Opposition at p. 1) is not true. As but one example, one of the cases 20-20 analyzed in its opening brief—*Yong v. Nemours Foundation*, 432 F. Supp. 2d 439, 441 (D. Del. 2006)—held that "[t]here is no statute, rule, or case that prohibits a court from" reopening discovery and designating a new expert at a new trial.

[2] Real View attempts to distinguish *Rochez* by stating that "the issue in that case was not reopening discovery, but rather the scope of evidence admissible on retrial." (Real View Opposition at p. 9 n.5.) Contrary to Real View's representations, the plaintiff in *Rochez* "filed a motion to open the record and take new testimony" related to damages on remand. 527 F.2d at 894.

at pp. 7-8.) Remarkably, however, many of the cases Real View relies on for its "manifest injustice" argument do not mention "manifest injustice" at all and instead articulate a standard that is fully in line with the analysis 20-20 presented to the Court in its opening brief. *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1209 (D. Del. 1989) (never mentioning "manifest injustice"; holding that the "Third Circuit has enumerated three factors which should concern this Court in exercise of its discretion [to reopen discovery]: the burden that would be placed on the parties and witnesses by additional proceedings; whether 'undue prejudice' may result by not taking additional evidence; and, whether taking additional evidence would unnecessarily drain judicial time and resources"); *Pittsburgh Terminal Corp. v. Baltimore & Ohio R.R.*, 586 F. Supp. 1297, 1300 (W.D. Penn. 1984) (not once mentioning "manifest injustice"; holding that "the question of whether to reopen proceedings on remand is committed to the sound discretion of the District Court"); *LNC Inv., Inc. v. Charter Nat. Life Ins. Co.*, 2000 U.S. Dist. LEXIS 10936 (S.D.N.Y. Aug. 3, 2000) (never mentioning "manifest injustice" in a case that focused on the plaintiff's failure to assert a claim in the pleading as well as the notice function of a pleading, not the standard for reopening discovery at a new trial); *Bookland of Me. v. Baker, Newman & Noyes, LLC*, 271 F. Supp. 2d 324, 332 (D. Me. 2003) (not once mentioning "manifest injustice"; summarily refusing to reopen discovery without articulating the applicable standard and controlling precedent).[3]

---

[3] Real View's reliance on *Samuel Black Co. v. Burroughs Corp.*, 1981 U.S. Dist. LEXIS 16289 (D. Mass. Dec. 18, 1981) is equally misplaced because the case did not involve reopening discovery at a new trial and thus did not articulate the applicable legal standard (i.e., the standard for the district court's power to allow additional evidence and witnesses during a new trial). Instead, *Samuel Black* dealt with a request to reopen discovery during an initial trial after the judge had previously extended discovery "with the specific admonition that no further extensions would be allowed." *Id.* at *32-33. In sum, *Samuel Black* is not instructive on the standard for allowing additional evidence at a *new trial* and has no application to the circumstances of this case.

Even *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993)—the case that Real View relies on for its argument that "manifest injustice" is "the legal standard most often applied" when deciding whether to reopen discovery (Real View Opposition at p. 7)—does not stand for that proposition at all. The *Cleveland* court did not mandate application of the "manifest injustice" standard; it never even defined "manifest injustice" (and neither did Real View or any other cases it cited). Instead, the *Cleveland* court said that the "principles [that] should govern the trial court's discretion in managing a second trial in any given case" involve "intelligent *flexibility*, taking into full consideration the *exigencies of each situation*" and "the *requirements of basic fairness to the parties in a new trial*." *Id*. at 1450 (internal citation omitted) (emphases added). As the *Cleveland* court summed up the relevant standard— "*common sense should control*." *Id*. (emphasis added).[4]

Real View is distracting the Court by arguing that "manifest injustice" supposedly drastically differs from "substantial justice." (Real View Opposition at p. 8.) At the same time, however, Real View ignores the cornerstone standard governing *all* of the cases that both Real View and 20-20 rely on: basic fairness to all parties, flexibility, and consideration of specific facts of each case. In this case, basic fairness dictates that the court should reopen limited discovery to accurately calculate damages for an admitted act of infringement and avoid a windfall to the admitted infringer.

> 2.  *20-20 Requests an Opportunity to Expand on the Evidence Presented at the First Trial, Not to Explore Issues Unknown to Either Real View or the Court*

At trial, 20-20 presented evidence relevant to the calculation of the value of an unlimited license to use 20-20 Design. While the Court ultimately ruled that the proffered evidence was

---

[4] Similarly, *Martin's Herend* recognizes that the district court may, in its discretion, "allow additional witnesses and relevant proof" at a new trial. 195 F.3d 775.

6

insufficient to support the jury's verdict, 20-20 submits that, in the interest of fairness, it should be allowed the opportunity to both expand on the evidence already of record and provide the jury with benchmark data on which to base a valuation of the forced license. *Total Containment,* 177 F. Supp. 2d at 339-40.

In *Total Containtment*, the court granted remittitur of the consequential damages award because the plaintiff failed to establish a sufficient causal link between the price increase for the defendant's pipe products and any "reasonably specific portion" of the total lost profits it sought. *Id*. at 339. During the first trial, the plaintiff presented "one piece of evidence" that the court could construe as "attempting to set that link"—a single marketing report discussing pricing. *Id*. The court noted that while this one piece of evidence "alone would not survive a remittitur, it would be unfair to prevent [the plaintiff] from expanding upon evidence which it previously introduced." *Id*. (emphasis added).

Significantly, the court held that any resulting prejudice to the other side would be minimal:

> In allowing TCI to *improve upon its case*, the *potential prejudice* on Dayco is *minimal*: it will largely confront the evidence and witnesses already admitted at the first trial. Discovery on this limited issue should be relatively short. If TCI cannot reasonably accommodate the discovery which Dayco anticipates is necessary, I will consider an appropriate motion filed in that regard.

*Id*. at 339-40 (emphases added).

The *Total Commitment* court allowed the plaintiff to conduct additional discovery and to introduce additional evidence at a new trial despite the fact that it had offered only one piece of evidence (a single marketing report) to establish a causal link for computation of damages at the first trial. Here, 20-20 offered at least three pieces of evidence that are relevant to the valuation of the hypothetical license, namely:

7

     (1.)     Evidence of "millions and millions" of dollars to develop 20-20 Design;

     (2.)     Evidence that 20-20's standard license fee contained a number of restrictions that Real View violated by illegally downloading a copy and using it to build a competing product, thereby proving that a standard $4,200 license fee for Real View's actual use would be highly inappropriate; and

     (2.)     Testimony that Real View's unrestricted license to 20-20 Design is comparable to acquisition of a competitor, such as Planit Fusion.

20-20 never made a "strategic" decision not to seek the value of use damages.[5] (Real View Opposition at p. 14.) It did seek the value of use damages and did present relevant evidence to the jury. Per *Total Containment*, the Court may now permit 20-20 to expand on this previously-presented evidence. By contrast, the cases Real View cites for its "strategic and tactical decision" argument primarily deal with introduction of completely *new claims* at a new trial, for which the party had previously introduced no evidence whatsoever at the original trial. For example, in *Habecker v. Clark Equipment Co.*, 36 F.3d 278, 287 (3d Cir. 1994), a party was not allowed to introduce a completely new issue on retrial—namely, the issue of whether the forklift was defective due to the lack of post-sale warning. Cases like *Habecker* have no application here because the value of use issue is anything but new.

Real View's "sky is falling" arguments that 20-20's requested limited discovery will turn out to be expansive and cost Real View's "hundreds of thousands of dollars" (Real View Opposition at p. 18) are both incorrect and premature. 20-20 is only asking that Real View produce its correspondence with developers in the Ukraine during the creation of ProKitchen Versions 2.0 and 3.0. Given Real View's size, it is likely that those documents are in Messrs.

---

[5] Contrary to its selective presentation of other cases to suggest the opposite (Real View Opposition at p. 13), Real View realizes that the value of use for a commercially-successful software product is high. *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir. 2003) ($1.2 million value of use damages award in a case involving software). This is precisely why it seeks to preclude any additional discovery at a new trial.

Zeldin and Perlov's immediate possession and can be located and produced easily. Real View ignored the fact that 20-20 is likely to have to respond at far greater expense to discovery requests by Real View. Indeed, as the court held in *Total Containment*, if questions about the scope of requested "limited" and "short" discovery arise, the Court "will consider an appropriate motion filed in that regard." 177 F. Supp. 2d at 340. At this stage of the proceeding, 20-20 asks the Court to refuse Real View's speculation as to what may or may not happen and allow 20-20 to expand upon the issues and evidence introduced at the first trial. Real View will have the same opportunity to object that the defendant in *Total Containment* enjoyed.

### 3. Real View's Argument that Additional Limited Discovery on the Calculation of Damages for an Admitted Act of Infringement Would Drain Judicial Resources Is Meritless

Limited additional discovery and the designation of a single expert to testify on a very specific issue will not burden judicial resources. *See, e.g., Pittsburgh Press Club v. U.S.*, 579 F.2d 751, 755 (3d Cir. 1978) (affirming the district court's decision to allow new evidence after remand; holding that "the two days of trial time required to receive the new evidence cannot be said to have significantly and unnecessarily drawn upon judicial resources, at least where the additional testimony and exhibits had the potential of *aiding in the resolution of difficult questions*") (emphasis added). Here, the *limited* discovery 20-20 requests will aid the resolution of a "number of complex legal questions" that, as this Court recognized, "were never fully addressed by the parties before the end of [the first] trial." (Memorandum at Order at p. 3, Dkt. 255, Sept. 21, 2011.)

These "complex legal questions" will be before the court in the new trial regardless of the outcome of this motion. From the standpoint of both fairness and the ultimate efficient use of judicial resources, it "is better that a court weigh evidence on this matter as presented to it by

experts rather than speculate as to what factors are, or can be considered." *Rochez*, 527 F.2d at 895.  Likewise, it is better for the Court and the jury to be equipped with full facts related to the infringer's use of the stolen copy of 20-20 Design to accelerate Real View's time to market, as opposed to forcing the parties to rely on speculation alone.

        **4.**     *Balancing the Fairness Considerations and Unique Circumstances of Each Case, the Court May Allow Additional Evidence Even When It Lets the Party Improve Its Case*

Real View expends much energy arguing that a litigant is always precluded from reopening discovery when such discovery allows the litigant to improve upon its case and, consequently, correct some strategic or tactical mistakes from the first trial.  As 20-20 showed in its opening brief, several courts have allowed additional discovery and the disclosure of a new expert at a new trial even when this resulted in allowing a party to improve upon its case.  *See, e.g., Yong*, 432 F. Supp. 2d at 442 ("[a]lthough the Court believe[d] this request involve[ed] an effort by the Yongs to address a perceived weakness in their case, the Court [found] that Nemours [would] not suffer any undue prejudice"); *Total Containment,* 177 F. Supp. 2d at 338-39 (allowing the party to "improve upon its case" by introducing new evidence at a new trial related to lost profits damages).

      **B.**     **Real View Waived Its Objection under Rule 26(a) and, in Any Case, Such an Objection Is Irrelevant at This Stage of the Proceedings**

In its opposition brief, Real View offers a new spin on its failed Rule 26(a) argument— this time using Rule 26(a) to attempt to bar additional limited discovery in advance of a new trial.  Real View's resurrected argument, however, fails for the same reason as before—it never raised a Rule 26(a) objection during the first trial, which constitutes a waiver of the right to complain about inadequate disclosure.  *See, e.g., Palmieri v. Celebrity Cruise Lines, Inc.*, 2000


WL 310341, at *6 (S.D.N.Y. Mar. 27, 2000).  (*See also* 20-20's Opposition to Real View's Motion for a New Trial at pp. 36-37, Dkt. 245, Aug. 30, 2011.)

In any case, nothing in Rule 16 indicates that a pretrial order from a first trial controls the range of evidence to be considered in a second trial.  *Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998) ("Indeed, such a cramped interpretation of Rule 16(e) would greatly hobble the parties from meaningfully relitigating an issue which the court has required retrial under Rule 59"; holding that it was error, after granting a motion for new trial, to exclude certain obviousness evidence because the party "knowingly chose not to rely on [the reference] during the first trial" in violation of Rule 16).[6]

Real View's belated disclosure objections are no basis for precluding the Court, in its discretion, from allowing additional evidence during a new trial, issuing a new scheduling order, and setting new dates for the production of documents and disclosure of experts.  Real View's exact argument failed in *Total Containment*, where the defendant, during the new trial after remittitur, attempted to exclude the plaintiff's amended expert report and 332 pages of new documents not produced before the first trial under Rule 26(a).  177 F. Supp. 2d at 336.  The court rejected the defendant's argument and held that, as the plaintiff "rightly notes, it did disclose [the expert's] amended report and 332 pages of new documents more than thirty days

---

[6] *Millenkamp v. Davisco*, 2009 WL 3430180 (D. Idaho Oct. 22, 2009), relied on by Real View, is distinguishable because it involved an attempt by a plaintiff to disclose a new expert *after* the district court, on remand, issued a new scheduling order, which did not address reopening discovery and disclosure of new experts.  Effectively, the plaintiff in *Davisco* was trying to admit a new expert without first securing the court's permission to reopen discovery.  Significantly, when articulating the general standard with regard to Rule 16 and Rule 26(a), the court acknowledged that "the new trial is de novo and that '[n]othing in Rule 16(e) indicates that a pretrial order from a first trial controls the range of evidence to be considered in a second trial.'"  *Id*. at *2.

before the upcoming retrial; the new evidence cannot be excluded on the basis [the defendant] proposes," i.e., Rule 26(a). *Id*. at 336-37.

Real View's Rule 26(a) argument, which is based on a purported failure to disclose during the first trial, is waived. The Court is not bound by the pretrial order from the first trial and can, in its discretion, allow new evidence and set a new scheduling order in accordance with this decision.

Generally, any prejudice from non-disclosure can be cured by providing additional time to conduct the necessary discovery (e.g., a deposition of a new expert). *See, e.g., Trammell v. Anderson College*, 2006 WL 1643230, at *1 (D.S.C. July 12, 2006) (striking the plaintiff's expert witnesses was unnecessary because the defendant had sufficient time before trial to respond to the plaintiff's disclosures); *Strougo v. BEA Assocs.*, 188 F. Supp. 2d 373, 380 (S.D.N.Y. 2002) ("Any prejudice caused by untimely disclosure was remedied by the availability of those months during which plaintiff could depose the expert."). As the First Circuit stated in *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 198 (1st Cir. 2006), a preclusion case Real View relies on (Real View Opposition at p. 12), "[b]ecause lack of prejudice is a specific caveat in Rule 37(c)(1) and preclusion is the death knell of plaintiff's case, we think the issue sufficiently important to warrant the district court's explicit consideration." Because Real View has conceded liability for the illegal download nearly from the outset and has long been aware (and has extensively briefed) the value of use damages issue and because any prejudice related to timing may now be cured by allowing additional 90 days for the limited discovery 20-20 seeks, preclusion is not warranted in this case.[7]

---

[7] As a final point, Real View's states that 20-20 was "disingenuous" in noting in the opening brief that it never ignored any of Real View's requests for evidence related to damages theories. (Real View Opposition at p. 15.) Real View's position is misplaced. 20-20 made the statement in its opening brief

12

### C.   20-20 Should Not Be Required to Cover Real View's Attorney's Fees and Expenses to Explore Defenses That Have No Basis in the Law

In its opposition, Real View prematurely raises the issue of attorney's fees and expenses under Rule 37(c)(1).[8]  While it is not the proper time to consider this issue because the Court has not even ruled on the motion to reopen discovery, Real View's claims that additional discovery will be expensive and complex and that 20-20 should pay both parties' attorney's fees and costs all trace back to Real View's contention that discovery is a two-way process, and that Real View is entitled to reciprocal discovery.  (Real View's Opposition at p. 16.)  Real View enumerates the issues it would seek discovery on, virtually all of which relate to its theory that, if 20-20 purportedly made the 20-20 Design interface available during trade shows, Real View should not compensate 20-20 for the illegally-downloaded copy.  (*Id.* at p. 17.)  As 20-20 detailed in its opening brief, Real View's position has no support in the law because the fact that something may be available legally does not excuse the choice to obtain it by illegal means.  (20-20's Memorandum in Support of a Motion to Reopen Discovery at p. 6 (citing *Smith v. Dravo Corp.*, 203 F.2d 369, 375 (7th Cir. 1953).)  If Real View wishes to expand the scope of limited discovery requested by 20-20 and run up the bill by conducting costly and time-consuming inquiries to support defenses that have no basis in the law, Real View should do so at its own expense.

---

solely for the purpose of distinguishing the *Level 3 Commc'ns, LLC v. City of St. Louis*, 540 F.3d 794, 796 (8th Cir. 2008) case raised by Real View, where discovery was not reopened because Level 3 chose not to address the question raised in the defendant's discovery requests.

[8] Having itself raised the issue in the opposition brief, Real View subsequently argued that 20-20 should not be allowed a reply to address this point and that "Real View will, if necessary and at the appropriate time, file a motion under Rule 37(c)(1)." (Real View's Opposition to 20-20's Motion for Leave to File a Reply at p. 2, Dkt. 266, Nov. 2, 2011.)

### III.   CONCLUSION

For the reasons discussed above, 20-20 requests that the Court grant its motion to reopen limited discovery and designate a new expert witness to testify about the calculation of the value of use damages.

Respectfully submitted,                              Dated:  November 14, 2011

                                                     20-20 TECHNOLOGIES, INC.
                                                     By its attorneys,


                                                     /s/Lawrence R. Robins
                                                     Lawrence R. Robins (BBO # 632610)
                                                     Jonathan M. Gelchinsky (BBO # 656282)
                                                     -email: larry.robins@finnegan.com
                                                     -email: jon.gelchinsky@finnegan.com
                                                     FINNEGAN, HENDERSON, FARABOW,
                                                     GARRETT & DUNNER, L.L.P.
                                                     55 Cambridge Parkway
                                                     Cambridge, MA 02142
                                                     Tel.: 617.452.1600
                                                     Fax: 617.452.1666

                                                     Anna Balishina Naydonov (*Pro Hac Vice*)
                                                     -email: anna.balishina@finnegan.com
                                                     FINNEGAN, HENDERSON, FARABOW,
                                                     GARRETT & DUNNER, L.L.P.
                                                     901 New York Avenue, NW
                                                     Washington, DC 20001
                                                     Tel.: 202.408.4000
                                                     Fax: 202.408.4400

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 14, 2011.

/s/ Lawrence R. Robins
Lawrence R. Robins